STATE OF NORTH CAROLINA v. JOHNNIE LEE GURLEY

No. 8

(Filed 1 June 1973)

1. Criminal Law § 162— failure to object to evidence

With the exception of evidence precluded by statute in furtherance of public policy, the failure to object to the introduction of evidence is a waiver of the right to do so, and its admission, even if incompetent, is not a proper basis for appeal.

2. Criminal Law § 87— allowance of leading questions

The trial court did not abuse its discretion in the allowance of leading questions where one such question was never answered and the two remaining questions merely elicited repetition of the same witness's earlier testimony.

3. Criminal Law §§ 50, 169— admission of alleged conclusions — no prejudicial error

The trial court in a rape and kidnapping case did not commit prejudicial error (1) in the admission of a conclusion of the victim that she found out her assailant had moved her car around to the back of the apartment where she subsequently testified that when she left defendant's apartment he told her he had parked her car behind the apartment and that she found it there and drove away in it; (2) in the admission of an alleged conclusion by a deputy sheriff that an exhibit was a blank check belonging to the victim and her husband

State v. Gurley

with a note written on the back of it where the victim had previously identified the exhibit as a note she had written to her husband at defendant's direction on a check taken from the checkbook of the witness and her husband, or (3) in the admission of an alleged conclusion of the deputy sheriff that stains on an exhibit appeared to be bloodstains where the victim had testified that blows to her head by her assailant with a pistol caused bleeding and the victim had identified the exhibit as a blindfold placed over her eyes by her assailant.

4. **Criminal Law § 89— cross-examination about pornographic magazines — impeachment**

Although pornographic magazines were excluded when offered in evidence by the State in a rape case, defendant was properly cross-examined about his possession of, familiarity with and interest in this type of literature for the purpose of impeachment.

5. **Criminal Law § 86— impeachment of defendant — particular acts**

The trial court in a rape and kidnapping case did not err in the admission of cross-examination of defendant by the solicitor concerning defendant's involvement in other criminal activities and the reason for defendant's departure from Charlotte and his move therefrom to another city, since defendant may be questioned as to particular acts impeaching his character.

6. **Criminal Law § 84; Searches and Seizures § 4— search under warrant — lapse of time between arrest and search**

Search of defendant's apartment under a warrant was not improper for the reason that defendant was removed from his apartment and taken into custody shortly after midnight on Friday and the search was not made until the following Monday morning, the arresting officer having testified that the apartment was locked when he left the apartment with defendant on Friday night and that it was locked when he returned on Monday morning with the search warrant.

7. **Kidnapping § 1; Rape § 5— sufficiency of evidence for jury**

The State's evidence, including the victim's in-court identification of defendant, was sufficient for the jury in a prosecution for kidnapping and rape.

8. **Criminal Law § 102— solicitor's argument supported by evidence**

Portions of the solicitor's jury argument of which defendant complains were amply supported by defendant's own testimony on cross-examination.

APPEAL by defendant from *Peel, J.,* at the 14 August 1972 Criminal Session of ONSLOW.

The defendant appeals from two concurrent sentences to imprisonment for life for the offenses of kidnapping and rape, he having been found guilty of each at a trial under an indictment, proper in form. The evidence for the State is to the following effect:

In the early morning of Friday, 16 June 1972, the prosecuting witness, after taking her husband to his duty as a member of the United States Marine Corps stationed at Camp Lejeune, returned to her locked apartment in Jacksonville. Entering the apartment, she was confronted in the bathroom by a man, then unknown to her but whom she positively identified in court as the defendant. At the time of the first confrontation, his face was partially concealed with an article of her underclothing. Immediately, and intermittently thereafter, the prosecuting witness was blindfolded with a strip torn from one of her towels, but later, for approximately two hours, she had ample opportunity to observe her assailant in the defendant's apartment to which he took her, it being in the same apartment complex as her own.

When first confronted by her assailant, the prosecuting witness screamed. He struck her twice upon the head with a pistol, drawing blood, and forced her against the wall where, with a knife at her throat, he threatened to kill her if she did not stop screaming. He then blindfolded her and took her into the bedroom, compelled her to disrobe and had sexual intercourse with her against her will.

Thereafter, the assailant compelled the prosecuting witness to write a note to her husband giving a fictitious account of her departure. Then, having directed her to resume her outer garments, he compelled her to get into her automobile with him by holding a knife at her back and forced her to drive approximately a mile to the end of a dirt road in a secluded wooded area.

There the assailant again compelled the prosecuting witness to disrobe and had intercourse with her against her will. After she again resumed her clothing, he compelled her to crouch down on the floor of the car while he drove back to the apartment complex and directed her into the defendant's apartment, the door of which he opened with a key. There they stayed for approximately two and a half hours, during which time he raped her on several other occasions, threatening to kill her and her husband if she reported the occurrence to anyone. He exhibited to her a number of pornographic magazines and finally permitted her to leave after exacting a promise that she would return on other occasions after taking her husband to work.

The prosecuting witness promptly went to her husband's post of duty and reported to him what had occurred. After she

State v. Gurley

was taken to the hospital for a medical examination and reported the matter to the police, including a full description of her assailant, of the cloth used as a blindfold, of guns, of bed covers and of pornographic magazines observed by her in the apartment to which she was taken, a deputy sheriff went to the defendant's apartment about midnight and found him there. He took the defendant to the police station where he was formally arrested in the early morning hours of Saturday, the next day.

On Monday morning, the arresting officer procured from a magistrate a search warrant authorizing a search of the defendant's apartment for the purpose of searching for articles described by the prosecuting witness as having been observed therein by her. At the time the officer and the defendant left the defendant's apartment, the apartment was locked. It was locked when the officer returned with the search warrant on Monday morning, after serving it upon the defendant. Searching the apartment, the officer found articles answering the descriptions given by the prosecuting witness, who identified each of them in court as the articles which she had observed in the apartment to which her assailant took her. The articles so found and identified were offered in evidence and, with the exception of the pornographic magazines, were admitted and exhibited to the jury.

The defendant, testifying in his own behalf, denied that he had ever seen the prosecuting witness prior to the preliminary hearing upon these charges and denied guilt of either offense. On cross-examination he acknowledged that the pornographic magazines had been in his apartment and that he was familiar with them. He described their contents in some detail.

Other witnesses for the defendant testified that he was in an automobile wreck approximately six hours before the prosecuting witness was first confronted by her assailant, at which time he had been drinking, and that he continued to drink after his return to his apartment with his companions, until they left him at approximately 3 a.m. The defendant's father testified that he went to the defendant's apartment after the officers had searched it and, in moving the defendant's clothing from the closet, found a torn towel which the police had not discovered in their search. This towel was identified by the prosecuting witness, called in rebuttal, as her towel from which the material used as a blindfold had been torn. It was the de-

State v. Gurley

fendant's contention that some other person had access to his apartment and put the towel there.

*Attorney General Morgan and Assistant Attorney General Rich for the State.*

*J. Reid Potter for defendant.*

LAKE, Justice.

The rape of which the defendant was convicted having been committed prior to our decision in *State v. Waddell,* 282 N.C. 431, 194 S.E. 2d 19, the imposition of the sentence to imprisonment for life therefor was not error insofar as the nature of the punishment imposed is concerned.

At the trial the defendant was represented by court-appointed counsel who gave notice of appeal in due time. Before the appeal was perfected, the trial counsel was relieved by order of the court, pursuant to the motion of the defendant, and the defendant was represented in this Court by counsel employed by his family. Due to the change in counsel, we extended the time for the docketing of the appeal and the filing of the defendant's brief.

[1] The defendant's Assignments of Error 1, 2, 5, 6 and 7 are directed to the admission in evidence of testimony to which no objection was made. It is elementary that, with the exception of evidence precluded by statute in furtherance of public policy, which exception is not applicable to these assignments of error, the failure to object to the introduction of the evidence is a waiver of the right to do so, and its admission, even if incompetent, is not a proper basis for appeal. *State v. McKethan,* 269 N.C. 81, 152 S.E. 2d 341; *State v. Howell,* 239 N.C. 78, 79 S.E. 2d 235; *Lambros v. Zrakas,* 234 N.C. 287, 66 S.E. 2d 895; *State v. Fuqua,* 234 N.C. 168, 66 S.E. 2d 667; *State v. Hunt,* 223 N.C. 173, 25 S.E. 2d 598; Stansbury, North Carolina Evidence, 2d Ed. § 27; Wigmore on Evidence, 3rd Ed. § 18. As said by Justice Parker, later Chief Justice, in *State v. Howell, supra,* "It is too late after the trial to make exceptions to the evidence." Due to the serious nature of the charges against the defendant and the extent of the sentences imposed, we have, nevertheless, carefully reviewed the entire record, including the admission of the evidence to which these assignments of error relate, and find therein no basis for the granting of a new trial.

[2] Assignment of Error No. 1 is to the allowance of leading questions, which "is a matter entirely within the discretion of the trial judge, and his rulings will not be reviewed on appeal, at least in the absence of a showing of abuse of discretion." *State v. Cranfield,* 238 N.C. 110, 76 S.E. 2d 353; Stansbury, North Carolina Evidence, 2d Ed. § 31. The record shows no such abuse of discretion even if we were to assume that objections had been duly interposed and overruled. The record does not show that one of the alleged leading questions was ever answered. For this further reason, no error is shown by the exception now taken to it. *State v. Fountain,* 282 N.C. 58, 66, 191 S.E. 2d 674. Two others merely elicited repetition of the same witness' earlier testimony. One of these was a mere introductory reference, on the morning of the second day of the trial, to the testimony of the same witness on the preceding day so as to furnish a starting point for the resumption of the examination. The remaining question to which this assignment of error relates was as to whether there were any stains upon the strip of towel used as a blindfold, the exhibit, itself, being before the jury and the presence of stains thereon obvious. The prosecuting witness had previously testified that the blows on her head with the pistol drew blood.

[3] The defendant's Assignment of Error No. 2 is directed to the admission, without objection, of three alleged conclusions of witnesses. The first was the statement by the prosecuting witness that she found out her assailant had moved her car around to the back of the apartment. In the first place, this is not, on its face, a conclusion. In any event, the same witness subsequently testified that, when she left the defendant's apartment, he told her that he had parked her car "around behind the apartment" and she went there, found it and drove away in it. Thus, had there been error in admitting the alleged conclusion, it was cured by this subsequent testimony. The second of the alleged conclusions was the testimony of the deputy sheriff that the State's Exhibit No. 1 was a blank check belonging to the prosecuting witness and her husband with a note written on the back of it. The prosecuting witness, herself, had previously identified this exhibit as a note she had written to her husband, pursuant to the dictation of her assailant, upon a check torn from the checkbook of the witness and her husband. The third of the alleged conclusions was the statement by the deputy sheriff that the stains on the blindfold appeared to be blood stains. The prosecuting witness had previously testified that

State v. Gurley

the blows upon her head by the pistol in the hand of her assailant caused bleeding and had identified the exhibit as the blindfold placed over her eyes by the assailant. This testimony of the deputy sheriff would not have been ground for a new trial even had an objection been interposed in due time and overruled.

The defendant's Assignment of Error No. 5 is to testimony elicited on cross-examination of a highway patrolman called as a witness for the defendant and of the deputy sheriff recalled as his witness by the defendant. No objection was interposed to any part of the examinations to which this assignment relates. The defendant now contends the questions asked were not within the proper scope of cross-examination. Had objection been interposed, there would have been no error in overruling such objection. There is no merit in this assignment of error.

[4] Assignment of Error No. 6 is to the admission of cross-examination of the defendant by the solicitor, without objection, concerning the contents of the pornographic magazines taken from his apartment pursuant to the search warrant. The defendant contends that this cross-examination relates to "evidence previously excluded." It appears from the record that this group of magazines was excluded, upon the defendant's objection, when offered in evidence by the State. It does not follow that, for this reason, the defendant, having subsequently testified as a witness in his own behalf, could not be cross-examined about his possession of, familiarity with and interest in this type of literature for the purpose of impeachment.

[5] The defendant's Assignment of Error No. 7 is directed to the admission in evidence, without objection, of certain cross-examination of the defendant by the solicitor concerning the defendant's involvement in other criminal activities and the reason for the defendant's departure from the City of Charlotte and his move therefrom to Jacksonville. The defendant, having testified as a witness in his own behalf, was subject to cross-examination for the purpose of impeachment. *State v. Fountain, supra,* at p. 68. For that purpose he may be questioned as to particular acts impeaching his character. *State v. Williams,* 279 N.C. 663, 185 S.E. 2d 174; *State v. Cureton,* 215 N.C. 778, 3 S.E. 2d 343; *State v. Sims,* 213 N.C. 590, 197 S.E. 176. The questions by the solicitor of which the defendant now complains did not inquire as to the nature of any indictments, arrests or other charges brought against him but were directed to the defend-

ant's own conduct. The first was as to the reason for the defendant's leaving Charlotte. The second was as to what the defendant had been "involved in" in the criminal courts. The record shows no answer to this question. See, *State v. Fountain*, *supra*. At this point, upon the request of the defendant's trial counsel, the court instructed the jury that any "prior *convictions* the defendant may testify to" (emphasis added) were admissible solely for the purpose of impeaching his testimony if they tended to do so and should be considered by the jury in that connection only. The remaining questions were as to whether the defendant had not been "involved in narcotics" and "involved with assault on a female." The defendant himself asked if the solicitor meant had he ever been convicted and thereupon the solicitor replied in the affirmative. The defendant's testimony was that he had not been convicted of these offenses. Had objections been interposed seasonably to these questions, the overrulings of such objections would not have been basis for a new trial.

In fairness to the defendant's trial counsel, the record shows that in the course of the trial he made numerous objections to evidence offered by the State and to questions propounded to the defendant on cross-examination. Some of these were sustained, some overruled. The record does not disclose, as the defendant seeks to imply on appeal, that his trial counsel, an experienced attorney, sat idly by and permitted the solicitor to introduce incompetent evidence at will. The advisability of objecting to questions propounded to a witness always calls for an exercise of counsel's judgment as to the competency and as to the effect of the probable answer. We find nothing in the record to indicate that the convictions of the defendant upon these two major criminal charges were the result of the failure of his assigned counsel to object to the evidence of which the defendant now complains on appeal.

In view of the overwhelming evidence presented by the State of unquestioned competence, any error in the admission of the evidence of which he now complains, assuming timely objection had been made, would clearly have been harmless error.

[6] The defendant's Assignment of Error No. 3 is to the admission in evidence, over objection, of articles taken from the defendant's apartment pursuant to a search thereof by the arresting officer. The search was conducted pursuant to a search warrant, proper in form and issued upon a sufficient affidavit. Upon objection to the evidence by the defendant, the court con-

ducted a voir dire and at the conclusion thereof made full findings of fact which were supported by the evidence on the voir dire. On the basis of these findings, the objection was overruled. The defendant's contention is that the search was improper for the reason that the defendant was removed from his apartment and taken into custody shortly after midnight on Friday and the search was not made until the following Monday morning. The testimony of the arresting officer, who also made the search of the apartment, is that when he left the apartment with the defendant on Friday night the apartment was locked and when he returned on Monday morning with the search warrant the apartment was locked. The defendant cites no authority in support of his contention that, under the circumstances, the lapse of time between the arrest and the search made the search unreasonable. We find no merit in this assignment of error. ·

[7]   The defendant's fourth assignment of error is to the denial of his motion for judgment of nonsuit. The evidence of the State is ample, if true, to show each element of each offense. The evidence offered by the defendant to contradict that offered by the State is not considered in the determination of the motion for judgment of nonsuit. Upon consideration of such motion, the evidence of the State is taken to be true and is to be considered in the light most favorable to the State's contention. *State v. Peele,* 281 N.C. 253, 188 S.E. 2d 326; *State v. McNeil,* 280 N.C. 159, 185 S.E. 2d 156. There is no merit in this assignment of error.

[8]   Assignment of Error No. 8 is to the solicitor's argument to the jury. The defendant contends that the solicitor therein made repeated references to evidence which had been excluded by the court. An examination of the solicitor's argument, which is set forth in the record, discloses first that the references by the solicitor of which the defendant now complains are amply supported by the defendant's own testimony on cross-examination and also discloses that no objection was made to this portion of the solicitor's argument. The only objection made to any portion of the solicitor's argument was sustained by the trial court. It had no relation to the defendant's eighth assignment of error. We find no merit in this assignment. The argument of counsel, especially in absence of objection at the time, must be left largely to the control and discretion of the trial judge. *State v. Westbrook,* 279 N.C. 18, 181 S.E. 2d 572. The record discloses no abuse of the privilege by the solicitor.

No error.