STATE OF NORTH CAROLINA v. JOHNNY C. HUGGINS

No. 7711SC722

(Filed 21 March 1978)

1. Searches and Seizures § 10— warrantless search of bedroom—probable cause —deputy's self-protection

　　A deputy sheriff's warrantless limited search of defendant's bedroom was not unconstitutional since the deputy had probable cause to believe that a search of the bedroom would lead to a knife which had been used as an instrumentality of the felony of crime against nature; he stood in the general vicinity of both the alleged perpetrator and the alleged victim, who was in an agitated state, and had reason to believe that the knife used in the commission of the alleged felony was in reach of both; and the deputy searched for the knife in order to protect himself.

**2. Criminal Law §§ 50.2, 162— objection to evidence—no motion to strike**

> Testimony by a deputy sheriff that a spot on the sheets of defendant's bed looked like blood was properly admitted in a prosecution for crime against nature; furthermore, defendant cannot be heard to complain of any error in the admission of the testimony since, after his objection to the testimony was overruled, defendant made neither a motion to strike nor a request for an instruction to the jury to disregard the testimony.

APPEAL by defendant from *McLelland, Judge.* Judgment entered 30 June 1977 in Superior Court, HARNETT County. Heard in the Court of Appeals 12 January 1978.

The defendant was indicted for the felony of crime against nature and entered a plea of not guilty. The jury returned a verdict of guilty of crime against nature as charged. From judgment sentencing him to ten years' imprisonment, defendant appealed.

The State offered evidence tending to show that on 12 March 1977 Scott Allen Murdock was in military service and stationed at Fort Bragg, North Carolina. Approximately 1:00 a.m. on that date, he was hitchhiking back to Fort Bragg from Hay Street in Fayetteville, North Carolina. Murdock was picked up by an unknown person who "started putting his hands on me" and engaged in a fight with that person resulting in Murdock's ear being bitten before he could get out of the car.

The State's evidence tended to show that the defendant, Johnny C. Huggins, then picked up Murdock, and Murdock agreed to go to the defendant's home to get medical attention for his injured ear. The defendant cleaned Murdock's ear and they shared a beer. Murdock then asked the defendant to take him back to Fort Bragg, and the defendant pulled a knife on him. The defendant offered Murdock twenty dollars to "go to bed with him." Murdock indicated that he would not, and the defendant backed him into a corner of the kitchen.

The State's evidence further tended to show that the defendant made Murdock go into a bedroom of the home. When Murdock resisted, the defendant stuck the knife in his back. While Murdock was lying on his stomach on the bed, the defendant held the knife to his back and performed a crime against nature upon him.

Having completed the unlawful sexual act, the defendant left Murdock in the room alone and told him to stay there. The de-

fendant told Murdock he would give him a ride back to the base in the morning. Murdock remained in the bedroom until he heard no noise from the defendant. He then left the home and called the Harnett County Sheriff's Department from a public telephone booth.

Shortly after Murdock called, he was met at the booth by Deputy Sheriff Ronald Green and reported what had taken place. Deputy Sheriff Green and Murdock then returned to the defendant's home. The deputy advised the defendant of Murdock's allegations and asked if the defendant would mind showing him the bedroom. The defendant answered, "not at all," and then showed the deputy into the bedroom.

When the deputy entered the bedroom, Murdock entered behind him. Murdock then stated: "There's my shorts in the corner." The deputy saw a spot which looked like blood on the sheet. At this point the deputy turned a pillow on the bed back and observed a knife. The three then left the room, and the deputy and Murdock departed the home.

The defendant testified in his own behalf and indicated that he had picked Murdock up and cleaned his ear. The defendant denied, however, any assault or that there had been a knife in the bedroom.

*Attorney General Edmisten, by Associate Attorney George W. Lennon, for the State.*

*Bowen & Lytch, P.A., by R. Allen Lytch, for defendant appellant.*

MITCHELL, Judge.

[1] The defendant first assigns as error the admission into evidence of the testimony of Deputy Sheriff Ronald Green concerning the knife which he stated he saw upon turning back the pillow in the bedroom of the defendant's home. The defendant contends that Deputy Green observed this knife, if at all, by virtue of an unconstitutional search and seizure. This assignment is without merit.

The trial court conducted a full *voir dire* hearing concerning the search of the bed in the defendant's home. At the conclusion

of the hearing, the trial court, based upon competent evidence, found that Deputy Green had probable cause to believe that a felony had been committed by the defendant shortly before Green's arrival at the residence. Additionally, the trial court found that Green was admitted by the defendant into the residence, and Green informed the defendant of the accusations against him and advised him of his constitutional rights. The court further found that Green then requested permission to look into the bedroom, and that the defendant granted him permission. The findings of the trial court being based upon competent evidence, are binding on this Court. *State v. Blackmon*, 280 N.C. 42, 185 S.E. 2d 123 (1971).

Based on the stated findings of fact, the trial court concluded that the defendant, with full knowledge of the allegations made against him by Murdock, understandingly and voluntarily consented to the officer's entry into the bedroom. The trial court further concluded that the moving of the pillow on the bed constituted a search by the deputy which had not been consented to by the defendant. Additionally, the trial court concluded that the deputy's knowledge that a knife might be in the room and that there might be a need to protect himself, together with the likelihood that evidence of the crime might be removed before a warrant could be obtained, was sufficient basis for his limited search for the knife without a warrant or permission. Having reached these conclusions, the trial court permitted Deputy Green to testify to having seen the knife under the pillow in the bedroom of the defendant's home at the time in question.

Only those searches and seizures which are unreasonable are constitutionally prohibited. *State v. Colson*, 274 N.C. 295, 163 S.E. 2d 376 (1968). One of the classes of cases representing a reasonable exception to the warrant requirement of the Fourth Amendment to the Constitution of the United States involves situations in which officers have "probable cause" for the search or seizure, and "exigent circumstances" exist making it impracticable to obtain a warrant. The conditions justifying searches or seizures under this exception to the requirement of a search warrant are totally independent from those justifying a search incident to an arrest. They are based not upon the right to arrest, but upon reasonable cause and exigent circumstances. 68 Am. Jur. 2d, Searches and Seizures, § 41, p. 695.

In the case *sub judice*, we must begin our analysis after the defendant had voluntarily consented to the deputy sheriff entering the bedroom. At that time, the deputy sheriff clearly had probable cause to believe that a search of the bedroom would lead to a knife which had been used as an instrumentality of the felony of crime against nature. Murdock had specifically informed the deputy that the crime had been perpetrated upon him by the defendant in that very bedroom and with a knife a short time previously.

In order that a search under the "probable cause" exception be proper, "exigent circumstances" must also exist which make it impracticable to obtain a warrant prior to searching. Here "exigent circumstances" existed which had not existed prior to the deputy entering the bedroom. The deputy stood in a bedroom in which he had reason to believe a violent felony had been recently committed with a deadly weapon. He stood in the general vicinity of both the alleged perpetrator and the alleged victim, who was in an agitated state, and had reason to believe that a knife used in the commission of the alleged felony was in reach of both. Clearly, it would have been impracticable to attempt at that time to obtain a warrant to look under the pillow. Deputy Green's search for weapons was justified without regard to the presence of probable cause to arrest as the search was strictly limited in nature to meet the need created by the exigencies which justified its initiation. *Terry v. Ohio*, 392 U.S. 1, 20 L.Ed. 2d 889, 88 S.Ct. 1868 (1968).

In order to authorize a search for weapons without a warrant, it is necessary to balance the need to search or seize against the invasion which the search or seizure entails. The Supreme Court of the United States held in *Terry* that the police officer must be able to point to specific and articulable facts which, taken together with rational inferences therefrom, reasonably warrant the intrusion.

Here, the facts were not merely articulable. They were, in fact, articulated by the officer when he stated that:

The only thing I did to protect myself was I was aware of the knife which I didn't observe anywhere in the area. I flipped the pillow back and the knife was there in my view. I was protecting myself. I just left it there. I didn't touch it.

We went back into the living room and I explained to him what could happen if this gentleman took charges against him.

Deputy Green entered the room with the consent of the defendant and with direct information from an informant, who was present and in no way wished to remain confidential, that a felony had been committed there shortly before with a deadly weapon. The deputy was able to, and did, articulate these specific facts which warranted the minimal additional intrusion of lifting the pillow. The remainder of the officer's actions were also reasonable. Having determined the location of the knife, he proceeded to leave the room with the others, presumably to remove any danger that the weapon would be used against him or anyone present.

Although the deputy's actions did not technically constitute a so-called "stop and frisk" procedure, we hold this to be one of those "carefully defined classes of cases" referred to in *Terry*, which make up an exception to the warrant requirement and that the officer's actions were appropriate and reasonable. In this regard, we cannot improve on the language of the Supreme Court of the United States when it stated:

> We are now concerned with more than the governmental interest in investigating crime; in addition, there is the more immediate interest of the police officer in taking steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him. Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties. American criminals have a long tradition of armed violence, and every year in this country many law enforcement officers are killed in the line of duty, and thousands more are wounded.

*Terry v. Ohio*, 392 U.S. 1, 23, 20 L.Ed. 2d 889, 907, 88 S.Ct. 1868, 1881 (1968).

To hold the search by the deputy in this case unreasonable or not justified by exigent circumstances would be to require officers to take just such unnecessary risks in the performance of their duties. This we decline to do, and the assignment of error is overruled.

[2] The defendant by his next assignment contends it was error for the trial court to permit Deputy Green to testify that: "I just looked at the sheets and they looked soiled. It looked like there was a spot of blood on the sheets, of course, I'm no analyst, but it looked like." The defendant objected at this point, and the objection was overruled.

The record does not reveal that, after the objection was overruled, the defendant made either a motion to strike or a request for an instruction to the jury to disregard the testimony. In the absence of such motion or request, the overruling of the defendant's objection presented nothing for review on appeal, and he is not entitled to be heard to complain of error in the admission of the testimony. *Highway Commission v. Black*, 239 N.C. 198, 79 S.E. 2d 778 (1954); *Mays v. Butcher*, 33 N.C. App. 81, 234 S.E. 2d 204 (1977).

In any event, the testimony of Deputy Green concerning the spot on the sheets was admissible. Although the general rule purports to prohibit the stating of opinions by non-expert witnesses, the decided cases present a plethora of exceptions which have nearly consumed the rule. *See, generally,* Stansbury, N.C. Evidence 2d, §§ 122 through 131.

Perhaps it would have been possible for Deputy Green to describe the location, position and coloration of the spot he observed on the sheet without stating that it looked like blood. To have required him to attempt to do so, however, would not have been practicable and would have been a triumph of form over substance. Whether the testimony here is admissible as an "instantaneous conclusion of the mind," or as a "natural and instinctive inference," or as a "shorthand statement of the fact" or as one of the many other exceptions to the rule is primarily an academic question. The admission of Deputy Green's testimony under the circumstances indicated herein was proper. *State v. Markham*, 5 N.C. App. 391, 168 S.E. 2d 449 (1969), *cert. denied,* 275 N.C. 597 (1969); Stansbury, N.C. Evidence 2d, § 125. This assignment of error is, therefore overruled.

Appellant also assigns as error that part of the trial court's charge to the jury concerning Deputy Green's testimony that he found a soiled or blood spot on the sheet of the bed and that Murdock picked up a pair of shorts in that room which he said were

his. The defendant contends that portions of this testimony by Deputy Green did not corroborate the testimony of Murdock and to include them in the charge was error.

The trial court instructed the jury specifically that the testimony of Deputy Green as to what Murdock said could be considered only as corroboration. Deputy Green's testimony as to Murdock's finding the shorts and identifying them as his, tended to corroborate Murdock's testimony that he had been forced at knife point to remove his clothing in the bedroom in which the underwear was found.

Deputy Green's testimony as to seeing the spot which looked like blood on the sheet, tended to corroborate Murdock's prior testimony that he had been sexually attacked on the bed and that a knife was "stuck into his back." Additionally, Deputy Green's testimony as to the spot on the bed would have been admissible independent of its tendency to corroborate Murdock. The physical fact of such a spot on the bed is clearly a circumstance calculated to throw light upon the crime charged, and Deputy Green's testimony of his direct observation of the spot was independently admissible. *State v. Robbins*, 287 N.C. 483, 490, 214 S.E. 2d 756, 761 (1975), *modified as to death penalty*, 428 U.S. 903, 49 L.Ed. 2d 1208, 96 S.Ct. 3208 (1976); *State v. Hamilton*, 264 N.C. 277, 141 S.E. 2d 506 (1965), *cert. denied*, 384 U.S. 1020, 16 L.Ed. 2d 1044, 86 S.Ct. 1936 (1966).

Finally, the defendant attempts to raise a broadside assignment of error to the charge of the trial court. Although not required by such assignment to do so, we have reviewed the charge as a whole, as every charge must be reviewed. *Beanblossom v. Thomas*, 266 N.C. 181, 146 S.E. 2d 36 (1965); *State v. Munday*, 5 N.C. App. 649, 169 S.E. 2d 34 (1969), *cert. denied*, 275 N.C. 597 (1969). We are of the opinion and so hold that it leaves no reasonable cause to believe the jury was misled or misinformed. This assignment is overruled.

The defendant had a fair trial free of prejudicial error, and we find

No error.

Judges MORRIS and CLARK concur.