STATE OF NORTH CAROLINA v. RONALD HAMMOND

No. 278A82

(Filed 8 March 1983)

1. **Escape § 6— felonious escape—evidence of commitments for felony and misdemeanor**

    In a prosecution of defendant under G.S. 148-45(b) for felonious escape while on work release, it was not error for the trial court to admit evidence that defendant was incarcerated for both a felony and a misdemeanor at the time he escaped, although the crime of felonious escape required proof that defendant was incarcerated for the commission of a felony, not a misdemeanor, since defendant could have been found guilty of the lesser included offense of misdemeanor escape under G.S. 148-45(a) if the felony commitment was determined to be invalid and the misdemeanor to be valid.

2. **Criminal Law § 66.18— in-court identification—appellate review—necessity for objection**

    Defendant waived his right to have the admission of an in-court identification considered on appellate review by failing to object at trial to the in-court identification. G.S. 15A-1446(b).

3. **Criminal Law § 66.16— photographic show-up—independent origin of in-court identification**

    Even if the pretrial display of an I.D. card with defendant's photograph on it to a rape victim was impermissibly suggestive, the victim's in-court identification of defendant was admissible as being of independent origin from the

photographic show-up where the trial court found upon supporting voir dire testimony that the assailant was in the presence of the victim for nearly three hours; although defendant wore a pair of pantyhose over his head, the pantyhose did not distort defendant's features and the victim could see his face through the hose; the victim gave an accurate description of defendant and the clothing he was wearing to a police officer; and the victim identified defendant without hesitation at trial and testified that her identification of him was based on her observation of him during the three hours she was in his presence at the time of the crime.

ON appeal by defendant from judgments entered by *Winberry, J.,* at the 22 March 1982 Criminal Session of Superior Court, NEW HANOVER County.

Defendant was charged in indictments proper in form with rape in the first degree, breaking or entering and larceny, armed robbery, larceny of an automobile, and escape from prison while on work release. Defendant was convicted of each charge.

Evidence presented by the state tended to show that on 20 July 1981 defendant was an inmate at the New Hanover County unit of the state prison system, serving sentences for assault with a deadly weapon on a police officer and assault on a female. As part of his sentence defendant participated in a work release program in which on some days he was checked out of the prison in the morning, worked under supervision in the community during the day, and then returned to prison after work for incarceration during the night. On 20 July 1981 defendant checked out of the prison at 7:00 a.m. and was supposed to return by 4:30 p.m. By 5:00 p.m. he had not arrived.

The state's evidence further tended to show that defendant reported for work the morning of 20 July 1981 but left at 12:30 p.m. Sometime between 12:30 p.m. and 3:15 p.m. defendant broke into and entered the home of Mrs. Brenda O'Connor. When Mrs. O'Connor and her six-year-old daughter walked into the house about 3:15, defendant grabbed Mrs. O'Connor from behind and threw her up against the wall. Defendant had a pantyhose loosely over his head and was armed with a knife. Donald O'Connor entered the house shortly thereafter and defendant wrestled him to the floor. Defendant forced the three victims into a bedroom, where he tied Mrs. O'Connor to her daughter and tied up Mr. O'Connor separately. Defendant cut Mr. and Mrs. O'Connor's clothes off and then began kissing Mrs. O'Connor on various parts

of her body. Defendant allowed Mrs. O'Connor and her daughter to get up so the daughter could go to the bathroom. Mother and daughter hobbled down the hall, hands and feet still tied. After some scuffling Mrs. O'Connor managed to hit defendant with a garden spade. Defendant then raped Mrs. O'Connor at knife point. Before leaving, defendant took money from Mr. O'Connor's wallet, one of Mrs. O'Connor's rings and some jewelry. He then took the keys to Mrs. O'Connor's car and drove away. He had been in the presence of the victims for about three hours.

Several hours after Mrs. O'Connor reported the assaults to the sheriff's department her car was observed parked in front of a house in Pender County. A deputy sheriff and an employee of the North Carolina Department of Correction who arrived at the house saw defendant inside. Defendant came out of the house, jumped off the end of the porch, and ran in a direction away from the officers. After giving proper warning, the officers fired shots at defendant and eventually took him into custody. Defendant was wearing green khaki pants and a green khaki jacket. Mrs. O'Connor's driver's license and the keys to her car were in defendant's pockets. A pair of crumpled pantyhose was found in the car.

At trial defendant presented no evidence.

*Rufus L. Edmisten, Attorney General, by Wilson Hayman, Assistant Attorney General, for the state.*

*Adam Stein, Appellate Defender, by James H. Gold, Assistant Appellate Defender, for defendant.*

MARTIN, Justice.

In this appeal defendant argues that he is entitled to a new trial because of two errors committed by the superior court. After careful review of defendant's claims, we have determined that defendant received a fair trial, free of prejudicial error. Accordingly, we affirm the judgments entered by the trial court.

[1] Defendant first argues that the court committed prejudicial error when it allowed the superintendent of the prison from which defendant escaped to testify that at the time defendant escaped he was serving a sentence imposed for misdemeanor assault on a female. In the instant case defendant was charged with felonious escape under N.C.G.S. 148-45 while on work

release. Before a defendant can be convicted of this offense, the state must prove beyond a reasonable doubt that at the time of his escape defendant was serving a sentence of incarceration imposed for the conviction of a felony. *State v. Johnson,* 21 N.C. App. 85, 203 S.E. 2d 424 (1974). In the case at bar the state was permitted to elicit testimony that at the time of his escape defendant was imprisoned by virtue of sentences imposed for a felony and for a misdemeanor. Defendant claims that the testimony that defendant was serving a prison sentence for a misdemeanor was irrelevant because the crime of felonious escape requires proof that defendant was incarcerated for the commission of a felony, not a misdemeanor. Defendant contends that the erroneous admission of the testimony concerning his incarceration for misdemeanor assault on a female highly prejudiced his case because this testimony made it more likely that the jury would believe that defendant was guilty of raping Mrs. O'Connor.

We hold that when a defendant is charged with escape from the state prison system under N.C.G.S. 148-45 the state is entitled to introduce evidence of any and all convictions for which defendant was in custody at the time of escape. When a defendant is charged with escape under this statute, the state has the burden of proving that defendant was in the legal custody of the Department of Correction at the time of the escape. Testimony concerning the kind of crimes for which defendant was sentenced to prison is relevant and competent evidence which the state may introduce in order to meet its burden of proof on this issue. If, in the present case, the felony commitment had been determined defective, then defendant would not have been guilty of felony escape under N.C.G.S. 148-45(b); however, if his imprisonment for a misdemeanor were valid, then defendant would have been guilty of the lesser included offense of misdemeanor escape under N.C.G.S. 148-45(a). *See State v. Ledford,* 9 N.C. App. 245, 175 S.E. 2d 605 (1970). In either situation the state would have been required to prove that defendant was in custody at the time of escape, and evidence that he was serving sentences for various crimes would be relevant for this purpose. Therefore, in the instant case it was not error for the trial court to admit evidence that defendant was incarcerated for both a felony and a misde-

meanor at the time he escaped from the lawful custody of the Department of Correction.[1]

[2]   Defendant next contends that he is entitled to a new trial because the trial judge erred in overruling his objection to Mrs. O'Connor's in-court identification of him as her assailant. We observe at the outset that defendant failed to object at trial to Mrs. O'Connor's in-court identification of him, and thus defendant has waived his right to have this considered on appellate review. N.C. Gen. Stat. § 15A-1446(b) (1978). The record shows that when the state asked Mrs. O'Connor during direct examination "[d]o you see your assailant here in the courtroom?" defendant objected and a voir dire was held. After voir dire and in the presence of the jury, the state again asked Mrs. O'Connor whether she could see her assailant in the courtroom. Defendant objected and the trial judge properly overruled this objection. Mrs. O'Connor answered the question by replying that she did observe her assailant in the courtroom. To this point, the witness had not identified defendant as her assailant. Then the following questioning occurred without any objection by defendant:

PROSECUTOR:      Would you [Mrs. O'Connor] point out your assailant?

MRS. O'CONNOR: (Pointing to the defendant.) He is sitting next to his attorney in the brown suit.

PROSECUTOR:      Your Honor, I would like the record to show that she is pointing to Ronald Hammond, the defendant.

THE COURT:       Let the record so show.

Because defendant failed to object to Mrs. O'Connor's identification of him during trial, defendant has waived his right to have the propriety of the in-court identification considered during this appeal. As this Court held in *State v. Foddrell*, 291 N.C. 546, 557, 231 S.E. 2d 618, 626 (1977):

---

1. If defendant was concerned that testimony of his prior conviction for misdemeanor assault on a female might prejudice his defense to the rape charge, he could have moved for severance of the escape and rape charges for trial. N.C. Gen. Stat. § 15A-927(a)(1) (1978).

The rule is as quoted in *State v. Jones,* 280 N.C. 322, 339-340, 185 S.E. 2d 858, 869 (1972): "It is elementary that, 'nothing else appearing, the admission of incompetent evidence is not ground for a new trial where there was no objection at the time the evidence was offered.' . . . An assertion in this Court by the appellant that evidence, to the introduction of which he interposed no objection, was obtained in violation of his rights under the Constitution of the United States, or under the Constitution of this State, does not prevent the operation of this rule." *See State v. Lowery,* 286 N.C. 698, 213 S.E. 2d 255 (1975); *State v. Gurley,* 283 N.C. 541, 196 S.E. 2d 725 (1973); 4 Strong's North Carolina Index 3d *Criminal Law* § 162 (1976).

Nevertheless, in our discretion we have examined the record carefully and have found that even if defendant had properly objected, the admission of the evidence would not have been error.

[3] In the present case, one-half hour after defendant left Mrs. O'Connor's residence Sergeant Long of the New Hanover Sheriff's Department arrived at Mrs. O'Connor's house. He asked Mrs. O'Connor whether she could identify her assailant and she answered "definitely. Yes." She then described the assailant's height, weight and facial features to Sergeant Long. Shortly thereafter Superintendent Stallings of the New Hanover prison unit arrived at Mrs. O'Connor's house. He produced an I.D. card with a photograph on it, showed it to Mrs. O'Connor, and asked her whether the man in the photograph might be her assailant. She answered that he was. The photograph was of the defendant. Defendant claims that this pretrial photographic observation was so unnecessarily suggestive that it gave rise to a substantial likelihood of misidentification of Mrs. O'Connor's assailant. Defendant contends that Mrs. O'Connor's identification of him as her assailant resulted from her view of the I.D. photo and that therefore her in-court identification of him should not have been allowed.

Identification evidence must be excluded as violating a defendant's rights to due process where the facts reveal a pretrial identification procedure so impermissibly suggestive that there is a very substantial likelihood of irreparable misidentification. *Simmons v. United States,* 390 U.S. 377, 19 L.Ed. 2d 1247 (1968); *State*

*v. White*, 307 N.C. 42, 296 S.E. 2d 267 (1982); *State v. Leggett*, 305 N.C. 213, 287 S.E. 2d 832 (1982); *State v. Thompson*, 303 N.C. 169, 277 S.E. 2d 431 (1981).

In the instant case, assuming arguendo that the pretrial photographic display was impermissibly suggestive, we find more than adequate evidence in the record to determine that Mrs. O'Connor's in-court identification was admissible as being of independent origin. It is well settled that

> an in-court identification is competent evidence, even if the witness took part in an illegal pretrial confrontation or photographic identification, where it is first determined by the trial judge on clear and convincing evidence that the in-court identification is of independent origin and thus not tainted by the illegal pretrial identification procedure. *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed. 2d 1149 (1967); *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed. 2d 441 (1963); *State v. Yancey*, 291 N.C. 656, 231 S.E. 2d 637 (1977); *State v. Henderson*, 285 N.C. 1, 203 S.E. 2d 10 (1974), *death sentence vacated*, 428 U.S. 902 (1976); 1 Stansbury's North Carolina Evidence § 57 (Brandis Rev. 1973).

*State v. Weimer*, 300 N.C. 642, 648, 268 S.E. 2d 216, 220 (1980).

As stated in *State v. Thompson, supra*, 303 N.C. 169, 172, 277 S.E. 2d 431, 434:

> The factors to be considered in determining whether the in-court identification of defendant is of independent origin include the opportunity of the witness to view the accused at the time of the crime, the witness' degree of attention at the time, the accuracy of his prior description of the accused, the witness' level of certainty in identifying the accused at the time of the confrontation, and the time between the crime and the confrontation.

In the present case the trial court found the following facts on voir dire: The assailant had been in the presence of the three victims for nearly three hours. Although he wore a stocking over his head, Mrs. O'Connor testified that "[i]t was a pair of pantyhose, and the top portion, the waist portion was used over the face." She further testified that the pantyhose did not distort

defendant's features and that she could see his face through the hose. When she described her assailant to Sergeant Long, Mrs. O'Connor stated with certainty that he was about six feet two inches tall, weighed about one hundred and sixty-five pounds, was wearing green pants and a green shirt, had a mustache and goatee, very high cheekbones and a sharp nose. She identified defendant without hesitation at trial and testified that her identification of him was based on her observation of him during the three hours she had been in his presence on 20 July 1981.

The facts found by the trial court are supported by clear, competent and convincing evidence and are conclusive upon this Court. *State v. Gibbs*, 297 N.C. 410, 255 S.E. 2d 168 (1979). At the conclusion of the voir dire held to determine whether Mrs. O'Connor's identification of defendant as her assailant was the result of unconstitutionally suggestive procedures, the trial judge concluded that:

> Based on clear and convincing evidence, the in-court identification of the defendant is of independent origin, based solely upon what the witness saw at the time of the alleged assault, and is not tainted by any pre-trial identification procedure so unnecessarily suggestive and conducive to irreparable mistaken identification as to constitute a denial of due process.

Considering Mrs. O'Connor's identification of Hammond in light of the totality of the circumstances, we hold that it was of origin independent of the photographic show-up. Therefore Mrs. O'Connor's identification would properly have been held admissible had defendant objected to it at trial.

Defendant's final contention is that he is entitled to a new sentencing hearing because the felony judgment and commitment form erroneously listed the crime of robbery with a deadly weapon as a Class C felony, whereas in fact it is a Class D felony. This clerical error has been corrected by the trial court and the record on appeal has been amended to include the corrected judgment. *York v. York*, 271 N.C. 416, 156 S.E. 2d 673 (1967); *State v. Cannon*, 244 N.C. 399, 94 S.E. 2d 339 (1956). The issue is moot.

We find that defendant received a fair trial, free of prejudicial error.

No error.