STATE OF NORTH CAROLINA v. LEROY WALLACE

No. 90A83

(Filed 9 August 1983)

1. **Criminal Law § 50.2— failure to strike testimony referring to "bloodstains"— no error**

     Since the trial judge in a prosecution for second degree murder could have properly allowed the witness to testify that he observed bloodstains, the court did not commit prejudicial error when it failed to instruct the jury to disregard the witness's statements identifying red stains as "bloodstains."

2. **Homicide § 30.3— failure to submit involuntary manslaughter as possible verdict—prejudicial error**

     Where defendant's evidence tended to show that he shot the victim when the defendant grabbed the gun and attempted to throw it across the room, the evidence was sufficient to merit an instruction of involuntary manslaughter. The fact that the evidence also merited an instruction of accidental killing which was given, did not alleviate the need for an instruction on involuntary

manslaughter since it also was properly presented by the evidence. Nor was the error cured when the jury returned a verdict of murder in the second degree.

**3. Homicide §§ 27.1, 28— instructions on voluntary manslaughter and self-defense not supported by evidence**

In a prosecution for second degree murder, the evidence did not support instructions on self-defense or voluntary manslaughter.

BEFORE *Davis, Judge*, at the 23 October 1982 Criminal Session of Superior Court, RICHMOND County, the defendant was convicted of murder in the second degree and sentenced to life imprisonment. The defendant appealed to the Supreme Court.

*Rufus L. Edmisten, Attorney General, by Harry H. Harkins, Jr., Assistant Attorney General, for the State.*

*Benny S. Sharpe, for defendant appellant.*

MITCHELL, Justice.

The defendant contends that the trial court erred in not striking testimony that referred to "bloodstains." We hold that such a characterization was admissible. The defendant also assigns as error the failure of the trial court to instruct the jury as to the possible verdict of guilty of involuntary manslaughter. We agree that the charge should have been given and order a new trial.

The evidence for the State tended to show that the defendant lived in South Carolina. On the afternoon of 24 April 1982, he rode with four other people to Hamlet, North Carolina to visit his girlfriend, Alberta Bethea, the deceased. A witness for the State testified that he saw Bethea sell marijuana to two people just prior to the defendant's arrival and that she had a large amount of money in her possession. The defendant appeared intoxicated when he arrived at Bethea's house and she indicated that she did not want him to stay if he was in that condition. The defendant and the deceased did not argue, but after a few minutes the defendant repeatedly asked the deceased if she wanted him to stay until she finally told him that she did not. At that point the defendant, who had his back toward the deceased, stood up, turned around and shot the deceased. All of these events took place in Bethea's den which was located in the lower level of the house.

After he shot Bethea the defendant carried her out of the house and put her into her car. While he was in front of the car, Anna Kara Bethea, the deceased's sixteen year old daughter, arrived home. The defendant told the girl, "I just killed your mother, I hated to do it." He then drove Bethea to the hospital, where he was arrested.

The defendant testified that he had been a frequent visitor at the Bethea house and went there on 24 April 1982 to spend the weekend. When he arrived at Bethea's house, he had had only one beer. He and Bethea went to the bedroom in the upper level of the house where the defendant asked her for $330.00 to pay a fine in South Carolina. Bethea agreed to give him the money, but when he asked for an additional $20.00 to pay for his ride to Hamlet, she got mad. She threw the money down and said that she would kill him before letting him leave with the money. Bethea started toward her gun which was on top of the dresser, but the defendant grabbed it out from under her hand. The defendant was attempting to throw the gun across the room when it fired and the bullet struck the deceased. He then put the gun in his pocket and picked Bethea up and carried her downstairs, through the den, put her in the car and drove her to the hospital. The defendant testified that Bethea was shot accidentally and that he did not mean to kill her because he loved her.

Two prior statements made by the defendant were also admitted into evidence. On 25 April 1982, the defendant told the police officers that Bethea had asked him to try to fix her gun. While he was attempting to uncock the gun, it fired and Bethea was killed. On 28 April 1982, the defendant admitted that he had lied in the 25 April statement. His second statement was substantially the same as his trial testimony, except as to the account of the actual shooting. The defendant stated, "Alberta Bethea said I will kill you before you get out of this house. Alberta Bethea started toward the dresser. I could see a gun laying on it. I got to the gun and grabbed it. Alberta Bethea came towards me. I shot Alberta Bethea." At trial the defendant explained that this statement was not incorrect, just incomplete. He stated that it was possible that he and the officer misunderstood each other when he made that statement.

[1] The defendant first assigns as error the failure of the trial court to instruct the jury to disregard a portion of a State's

witness's testimony to which the court had sustained the defendant's objection. We hold that it would not have been error for the court to have overruled the defendant's objection to the testimony and, therefore, the court's failure to instruct the jury to disregard the testimony was not prejudicial error.

The main investigating officer, Lieutenant Terry Moore, testified that when he was examining a chair in the den of Bethea's house, he observed "bloodstains." The defendant stated to the court, "I object to him calling them bloodstains, your Honor. Move to strike it." The court sustained the objection but did not act on the motion to strike. The witness proceeded to identify the discoloration as a "red stain." During a later portion of his testimony, Lieutenant Moore again referred to "the chair that was bloodstained," which precipitated the following exchange:

> MR. SHARPE: Object to that, if your Honor, please. Strike that.
>
> A. I'm sorry, red stained.
>
> THE COURT: Just a moment. Do you want to say more?
>
> MR. SHARPE: Your Honor, the officer was indicating that the—in his testimony that the stains on the chair were bloodstains.
>
> THE COURT: As to what the stains were, SUSTAINED.

While our rules of evidence generally purport to prohibit the stating of opinions by nonexperts, the decided cases present a plethora of exceptions which have nearly consumed the rule. *State v. Huggins*, 35 N.C. App. 597, 242 S.E. 2d 187, *disc. rev. denied*, 295 N.C. 262, 245 S.E. 2d 779 (1978). Numerous cases have held that a witness may testify that he or she saw "blood" or "bloodstains." *State v. Mason*, 295 N.C. 584, 248 S.E. 2d 241 (1978), *cert. denied*, 440 U.S. 984, 60 L.Ed. 2d 246, 99 S.Ct. 1797 (1979); *State v. Jones*, 291 N.C. 681, 231 S.E. 2d 252 (1977); *State v. Gurley*, 283 N.C. 541, 196 S.E. 2d 725 (1973); *State v. Locklear*, 41 N.C. App. 292, 254 S.E. 2d 653, *rev. denied*, 298 N.C. 571, 261 S.E. 2d 129 (1979); *State v. Ledford*, 41 N.C. App. 213, 254 S.E. 2d 780 (1979); *State v. Huggins*, 35 N.C. App. 597, 242 S.E. 2d 187, *disc. rev. denied*, 295 N.C. 262, 245 S.E. 2d 779 (1978). Since the trial

court could have properly allowed the witness to testify that he observed bloodstains, the court did not commit prejudicial error when it failed to instruct the jury to disregard the witness's statements.

[2] The defendant also contends that the court erred by not submitting the possible verdict of guilty of involuntary manslaughter to the jury. Having reviewed the evidence in this case, we hold that it was prejudicial error to refuse the defendant's requested charge on involuntary manslaughter.

The court submitted three possible verdicts to the jury, "1. Guilty of second degree murder; or 2. Guilty of voluntary manslaughter; or 3. Not guilty." In addition, the court instructed on self-defense and accidental killing, as the defendant had requested. The defendant's request for an instruction on involuntary manslaughter was, however, denied. The jury returned a verdict of guilty of murder in the second degree.

When there is evidence from which the jury could find the defendant guilty of a lesser included offense, the defendant is entitled to proper instructions on that lesser offense. *State v. Cates*, 293 N.C. 462, 238 S.E. 2d 465 (1977); *State v. Redfern*, 291 N.C. 319, 230 S.E. 2d 152 (1976); *State v. Wrenn*, 279 N.C. 676, 185 S.E. 2d 129 (1971). In the present case, the defendant's evidence, if believed, could support a verdict of involuntary manslaughter. Involuntary manslaughter has been defined as the unlawful and unintentional killing of another human being, without malice, which proximately results from an unlawful act not amounting to a felony and not naturally dangerous to human life, or from an act or omission constituting culpable negligence. *State v. Norris*, 303 N.C. 526, 279 S.E. 2d 570 (1981); *State v. Wilkerson*, 295 N.C. 559, 247 S.E. 2d 905 (1978); *State v. Everhart*, 291 N.C. 700, 231 S.E. 2d 604 (1977).

Clearly there was sufficient evidence of involuntary manslaughter in the case *sub judice* to merit an instruction regarding that possible verdict. The defendant testified that Bethea was shot when the defendant grabbed the gun and attempted to throw it across the room. The jury could have found that the defendant's action in handling a gun in this way when he believed it to be loaded and cocked constituted culpable negligence, even

under the circumstances as he described them. As we stated in *State v. Foust*, 258 N.C. 453, 459, 128 S.E. 2d 889, 893 (1963):

> It seems that, with few exceptions, it may be said that every unintentional killing of a human being proximately caused by a wanton or reckless use of firearms, in the absence of intent to discharge the weapon, or in the belief that it is not loaded, and under circumstances not evidencing a heart devoid of a sense of social duty, is involuntary manslaughter.

*Accord, State v. Moore*, 275 N.C. 198, 166 S.E. 2d 652 (1969).

The State in its brief concedes that the defendant was entitled to an instruction on the lesser included charge of involuntary manslaughter. The State argues, however, that because the court charged on accidental killing, the defendant received a more favorable charge and therefore was not prejudiced by the failure of the court to submit the issue of involuntary manslaughter. This argument is without merit.

The defendant's evidence supported an instruction on accidental killing. *See State v. Fleming*, 296 N.C. 559, 251 S.E. 2d 430 (1979). Such an instruction does not alleviate the need for an instruction on involuntary manslaughter when properly presented by the evidence. Even though the concept of culpable negligence was not defined to the jury, they nevertheless could believe the defendant's evidence and yet find that his handling of the gun constituted what would amount to culpable negligence. Under the instructions as given, the jury would be in a quandary as to which verdict to return. A culpably negligent act would not fit the definition of accident, self-defense, voluntary manslaughter or murder in the second degree.

The error in failing to instruct on involuntary manslaughter in this case was not cured by the verdict of murder in the second degree. As we stated in *State v. Wrenn*, 279 N.C. 676, 681, 185 S.E. 2d 129, 132 (1971), when there is evidence of guilt of the lesser charge,

> [e]rroneous failure to submit the question of defendant's guilt of lesser degrees of the same crime is not cured by a verdict of guilty of the offense charged because, in such case, it cannot be known whether the jury would have convicted of a

lesser degree if the different permissible degrees arising on the evidence had been correctly presented in the court's charge.

This is also true when the jury returns a verdict convicting the defendant of the highest offense charged, even though the conviction could have been of an intermediate offense. *State v. Freeman*, 275 N.C. 662, 170 S.E. 2d 461 (1969). We note, however, that an error in an instruction on manslaughter may be cured by a verdict of murder in the first degree when there was a proper instruction as to murder in the first degree and murder in the second degree. *State v. Bush*, 307 N.C. 152, 297 S.E. 2d 563 (1982); *State v. Freeman*, 275 N.C. 662, 170 S.E. 2d 461 (1969).

The principle that the error is not cured by the verdict of guilty of murder in the second degree is particularly applicable in the present case. If the jury did not believe that the shooting was a nonnegligent accident, then under the evidence and instructions it was left with no alternative other than a verdict of murder in the second degree. Although the instructions were given, the evidence in the case would not support a verdict of not guilty by reason of self-defense or a verdict of guilty of voluntary manslaughter.

[3] A defendant is entitled to an instruction on perfect self-defense as an excuse for a killing when it is shown that, at the time of the killing, the following four elements existed:

(1) it appeared to defendant and he believed it to be necessary to kill the deceased in order to save himself from death or great bodily harm; and

(2) defendant's belief was reasonable in that the circumstances as they appeared to him at the time were sufficient to create such a belief in the mind of a person of ordinary firmness; and

(3) defendant was not the aggressor in bringing on the affray, i.e., he did not aggressively and willingly enter into the fight without legal excuse or provocation; and

(4) defendant did not use excessive force, i.e., did not use more force than was necessary or reasonably appeared to him to be necessary under the circumstances to protect himself from death or great bodily harm.

*State v. Bush,* 307 N.C. 152, 158, 297 S.E. 2d 563, 568 (1982) (quoting *State v. Norris,* 303 N.C. 526, 530, 279 S.E. 2d 570, 572-73 (1981) ).

In the present case the State's evidence, if believed, clearly supports nothing less than a verdict of murder in the second degree. The defendant's evidence, however, indicates that he did not shoot the deceased intentionally. Although she had threatened to kill him and he believed she was about to grab the gun, his only intent was to throw the gun across the room and the gun fired accidentally. This testimony clearly establishes that the first element of self-defense was not present: the defendant did not believe it to be necessary to kill the deceased. *State v. Rawley,* 237 N.C. 233, 74 S.E. 2d 620 (1953).

Other than the State's evidence, the only evidence that the defendant might have shot the deceased intentionally is his second statement. At trial he testified that the statement was not complete and accurate insofar as it gave the impression that he intentionally shot Bethea as she was moving toward him. Assuming, *arguendo,* that the statement does indicate that he intentionally shot the deceased, it is nevertheless insufficient to invoke the doctrine of self-defense. The record is completely devoid of any evidence tending to prove the second element of self-defense, that the defendant's belief was reasonable. The deceased was unarmed and the defendant had a gun. There was no evidence introduced to show that the defendant was afraid of the deceased or that she could have overpowered the defendant or prevented him from leaving.

> In other words, before the defendant is entitled to an instruction on self-defense, two questions must be answered in the affirmative: (1) Is there evidence that the defendant in fact formed a belief that it was necessary to kill his adversary in order to protect himself from death or great bodily harm, and (2) if so, was that belief reasonable? If both queries are answered in the affirmative, then an instruction on self-defense must be given. If, however, the evidence requires a negative response to either question, a self-defense instruction should not be given.

*State v. Bush*, 307 N.C. 152, 160-61, 297 S.E. 2d 563, 569 (1982). Therefore, there was no evidence on which the jury could have found the defendant not guilty by reason of perfect self-defense.

Similarly, there was no evidence to support a verdict of voluntary manslaughter. In general, voluntary manslaughter is an intentional killing without premeditation, deliberation or malice but done in the heat of passion suddenly aroused by adequate provocation or in the exercise of imperfect self-defense where excessive force under the circumstances was used or where the defendant is the aggressor. *State v. Norris*, 303 N.C. 526, 279 S.E. 2d 570 (1981); *State v. Wilkerson*, 295 N.C. 559, 247 S.E. 2d 905 (1978). Clearly, in the present case there was no evidence tending to indicate that the defendant killed the deceased in the heat of passion suddenly aroused by adequate provocation.

In order for an instruction on imperfect self-defense to be required, the first two elements of perfect self-defense must be shown to exist. *State v. Bush*, 307 N.C. 152, 297 S.E. 2d 563 (1982). As pointed out above, the evidence indicated that the defendant did not in fact form a belief that it was necessary to kill the deceased and, if he did form such a belief, there is no evidence tending to show that such a belief was reasonable under the circumstances. Therefore, there was no basis on which the jury could have found the defendant guilty of voluntary manslaughter.

As previously stated, the State's evidence in the present case, if believed, would only support a verdict of guilty of murder in the second degree. The defendant's evidence, if believed, would support verdicts of guilty of involuntary manslaughter or not guilty by reason of accidental killing. The failure of the trial court to submit the issue of involuntary manslaughter was prejudicial to the defendant and mandates a new trial. Additionally, if the same evidence is presented at retrial, the court should not instruct on self-defense or voluntary manslaughter. *State v. Fleming*, 296 N.C. 559, 251 S.E. 2d 430 (1979); *State v. Wilkerson*, 295 N.C. 559, 247 S.E. 2d 905 (1978); *State v. Moore*, 275 N.C. 198, 166 S.E. 2d 652 (1969).

Finally, the defendant assigns as error the failure of the State to provide a complete transcript as required under G.S. 15A-1241. Apparently, the court reporter omitted portions of the transcript which included the defendant's cross examination of

Lieutenant Moore. Since our holding in this case requires a new trial, the defendant was not prejudiced by any possible omissions in the transcript.

New trial.