STATE OF NORTH CAROLINA v. CARL RAY BOONE

No. 81

(Filed 1 April 1980)

1. **Homicide § 15; Criminal Law § 162— what witness believed or thought—no motion to strike— defendant not prejudiced**

    Defendant was not prejudiced by a witness's testimony regarding her beliefs or thoughts as to defendant's residence, since defendant made no motion to strike, and since a different result probably would not have been reached at trial had the complained of testimony been excluded.

2. **Homicide § 15— manner of shooting gun—admissibility of evidence**

    Defendant in a second degree murder prosecution was not prejudiced by a witness's testimony concerning the manner in which defendant was shooting a gun, since the crux of the testimony was that defendant was running behind the deceased shooting a pistol, and the manner in which he was shooting it was of little moment.

3. **Homicide § 15; Criminal Law § 162— evidence of bullet hole—no motion to strike—defendant not prejudiced**

    Defendant was not prejudiced by testimony that a bullet hole in a cabinet at the crime scene "was shot in there that morning," meaning at the time of the incident in question, since defendant did not move to strike the testimony, and there was no reasonable possibility that, had the testimony been excluded, a different result would have been reached.

4. **Homicide § 14.6— self-defense—burden of proof not on State**

    There was no burden on the State in a second degree murder prosecution to prove the non-existence of self-defense where the evidence tended to show that defendant, unprovoked, first accosted deceased with a deadly weapon in a third person's home; then, while continuing to fire the weapon, he chased deceased to the home of another person; witnesses heard the firing of the weapon while defendant and deceased were in the second house; shortly thereafter deceased was found on the kitchen floor, dead of a bullet wound and holding a butcher knife in his hand; and there was no evidence of precisely what happened in the kitchen.

5. **Homicide § 27— involuntary manslaughter and manslaughter interchangeable terms—instruction not prejudicial**

    Defendant in a second degree murder case was not prejudiced by the trial judge's instruction that the terms "involuntary manslaughter" and

"manslaughter" had the same meaning for purposes of the trial and were interchangeable, since the instruction was clearly precautionary and designed to prevent confusion in the minds of the jurors should the trial judge inadvertently use the term "involuntary manslaughter" in his further instructions.

**6. Homicide § 28 — self-defense — defendant not entitled to instruction — instruction not prejudicial**

The trial court's instruction designed to permit the jury to find defendant guilty of manslaughter on the theory that he shot deceased in the exercise of an imperfect right of self-defense was not prejudicial to defendant, since he was not entitled to an instruction on self-defense, perfect or imperfect.

**7. Homicide § 28 — self-defense — instruction not misleading**

The jury was not misled by the trial judge's instruction that he was referring to self-defense when he used the phrase "without lawful justification or excuse," since the judge intended to convey to the jury the notion that "justification or excuse" referred to the doctrine of "self-defense," and the judge properly defined self-defense elsewhere in his charge.

BEFORE *Judge Small* at the 27 November 1978 Session of GATES Superior Court defendant was convicted by a jury of murder in the second degree. He was sentenced to life imprisonment. He appeals pursuant to G.S. 7A-27(a). This case was argued as No. 25 at the Fall Term 1979.

*Rufus L. Edmisten, Attorney General, by W. A. Raney, Jr., Special Deputy Attorney General, for the state.*

*Philip P. Godwin, Attorney for defendant.*

EXUM, Justice.

Defendant assigns as error: (1) the admission of certain testimony; (2) denial of his motion for dismissal for insufficiency of the evidence; (3) certain aspects of the trial court's jury instructions; and (4) denial of his motion to set aside the verdict as being contrary to the greater weight of the evidence. We find no merit in any of these assignments and no prejudicial error in the trial.

The state's evidence tended to show as follows:

On 4 July 1978 the deceased, Ervin Cross, came to the home of Virginia Cross in the Boonetown Community in Gates County. He had earlier repaired a window in the Virginia Cross home. He was there on the occasion in question to determine if the window

was working properly. Defendant entered the house through the back door. He said to Virginia Cross, who was also present, "Move, [I am] going to shoot." Defendant pushed Virginia Cross against the refrigerator. She then observed defendant pull a pistol out of his pants' pocket. Virginia Cross ran out on the porch and "froze." She heard a pistol go off in the house. She then observed defendant and the deceased running across a field heading toward Vandell Cross' house. Defendant was running behind Ervin Cross. As he ran defendant shot the pistol three times. Both Ervin Cross and the defendant entered Vandell Cross' back door.

Essie Brown was present in Vandell Cross' residence when the deceased and defendant entered. Being scared, Essie Brown locked herself in the bathroom. She heard shots "that sounded like they were coming from the backyard of Vandell's house." She stayed in the bathroom for two or three minutes. She then left the bathroom and ran out of the house through the living room. When she ran by the kitchen door she saw Ervin Cross lying on the floor.

Vandell Cross, who was in the area at the time, observed the deceased and defendant run toward his house. When he arrived at his house he went in the kitchen. He observed the deceased lying on the floor. Defendant "was going back the same direction that he came, down across my yard, and Virginia's yard, on back around by the hog pasture." The deceased, Vandell Cross testified, was "laying there dead with a butcher knife in his hand. I never saw Carl Ray [defendant] with anything in his hand. I was getting out of my truck and heard one shot that sounded like it came from my back door. I didn't see anybody else but Carl Ray and I didn't say anything to him nor did he speak to me." Vandell Cross testified that the knife he observed in the deceased's hand had been placed on the kitchen table "where I left it . . . that morning . . . ."

The coroner testified that the deceased died from a bullet wound to his chest which pierced his heart, esophagus, aorta, and left lung. The bullet itself was identified by a firearms expert as being a .32 caliber bullet. Efforts by investigators to recover the weapon were unsuccessful.

Defendant offered no evidence.

The trial judge instructed the jury that they might return verdicts of guilty of second degree murder, manslaughter, not guilty, and not guilty by reason of self-defense. The jury returned a verdict of guilty of second degree murder. Defendant was sentenced to life imprisonment.

Defendant first assigns error to the admission of certain testimony.

[1] During the examination of state's witness Virginia Cross, she gave the following testimony:

"I also had occasion to see Carl Ray Boone at my house on the morning of July 4, 1978. I have known Carl Ray ever since I have been living here in Boonetown.

Q. Does Carl Ray live in that community, or not?

A. Not in the community we do, off from where we do.

Q. Had he been living there around July 4th, or somewhere else?

A. I think he was in New York or Philadelphia, or some place.

OBJECTION to what she 'thinks.'

OVERRULED."

Assuming arguendo that Virginia Cross should not have been permitted to testify regarding her beliefs or thoughts as to defendant's residence, nevertheless we find no prejudicial error in this incident. Defendant's proper response to the witness' objectionable answer was a motion to strike. Failure to make such a motion precludes defendant from relying on the objectionable answer on appeal. *State v. Grace*, 287 N.C. 243, 213 S.E. 2d 717 (1975); *State v. Battle*, 267 N.C. 513, 148 S.E. 2d 599 (1966). Furthermore we are satisfied that this answer, even if improperly admitted, did not prejudice defendant. Defendant argues that the evidence put him in the position of an "outsider" and thereby prejudiced him in the eyes of the jury. This argument falls, however, inasmuch as Virginia Cross also testified that she had "known Carl Ray ever since I have been living here in Boonetown." She consistently referred to him in her testimony as "Carl Ray" indicating that defendant was familiar to her. Both

Essie Brown and Vandell Cross also referred to the defendant as "Carl Ray" indicating that he was likewise familiar to them. G.S. 15A-1443(a) provides, "A defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." We are satisfied that there is no reasonable possibility that a different result would have been reached at this trial had the complained of testimony been excluded.

[2] Another incident complained of by the defendant also occurred during the testimony of Virginia Cross:

"Q. Can you describe what you observed Carl Ray doing as he was running behind Ervin?

OBJECTION.

OVERRULED.

A. He was shooting that pistol, he shot that pistol three times running across the path.

Q. Carl Ray did?

A. Yes, three times.

Q. Can you describe how Carl Ray was holding the pistol?

A. Not exactly, but he must have been shooting like this (indicating with hand), because he was running, and Ervin was running.

OBJECTION AND MOTION TO STRIKE.

MOTION TO STRIKE DENIED. OBJECTION OVERRULED.

Q. Could you see the pistol at that time?

A. No, I heard the pistol."

Again, defendant complains of Virginia Cross' testimony that "he must have been shooting like this (indicating with hand)" inasmuch as this seems to be an impermissible conclusion on the part of the witness. Suffice it to say that the crux of this

testimony was that defendant was running behind the deceased shooting a pistol. The manner in which he was shooting is of little moment. Assuming the testimony was incompetent and should have been stricken, we are satisfied defendant was not prejudiced by it. G.S. 15A-1443(a).

[3] Investigating SBI Agent Eugene Bryant testified, without objection, that his investigation of the scene of the shooting revealed a bullet hole in the top door of one of the kitchen cabinets, several broken dishes, a projectile, and fragments of lead lying inside the cabinet. During the redirect examination of Vandell Cross the following occurred:

> "Q. Now this hole that you described in the cabinet, had that been there, had that hole been there before this day?
>
> A. No—
>
> OBJECTION.
>
> A. It was shot in there that morning.
>
> OVERRULED.
>
> Q. Would you repeat that?
>
> A. I said that was shot in there that morning.
>
> OBJECTION.
>
> OVERRULED."

Defendant assigns as error the admission of this testimony. It was, of course, proper for Vandell Cross to testify that the hole had not been in the cabinet before the day of the shooting. Assuming the statements as to when it was "shot in there" were inadmissible since the witness did not actually see the shooting, defendant's assignment of error insofar as it is based on this incident must nevertheless fail. Defendant did not move to strike the testimony. Again, we are satisfied that there is no reasonable possibility that had this testimony been excluded a different result would have been reached. The hole not having been in the cabinet before the day in question and being discovered there immediately after the incident, the conclusion is inescapable that the hole was "shot in there" during the incident under investigation.

[4]　Defendant next assigns as error the denial of his motion for dismissal at the close of the evidence. Defendant argues that the motion should have been allowed because the state failed to prove beyond a reasonable doubt that defendant did not act in self-defense. The state must prove that a defendant did not act in self-defense only when there is some evidence of self-defense in the case. *State v. Hankerson,* 288 N.C. 632, 220 S.E. 2d 575 (1975). We said in *Hankerson,* 288 N.C. at 649-50, 220 S.E. 2d at 588:

> "The *Mullaney* ruling does not, however, preclude all use of our traditional presumptions of malice and unlawfulness. It precludes only utilizing them in such a way as to relieve the state of the burden of proof on these elements when the issue of their existence is raised by the evidence. The presumptions themselves, standing alone, are valid and, we believe, constitutional. *State v. Williams,* 288 N.C. 680, 220 S.E. 2d 558 (1975); *State v. Sparks,* 285 N.C. 631, 207 S.E. 2d 712 (1974), pet. for cert. filed, 43 U.S.L.W. 3392 (U.S. Nov. 29, 1974) (No. 669). Neither, by reason of *Mullaney,* is it unconstitutional to make the presumptions mandatory in the absence of contrary evidence nor to permit the logical inferences arising from facts proved (killing by intentional use of deadly weapon), *State v. Williams, supra,* to remain and be weighed against contrary evidence if it is produced. The effect of making the presumptions mandatory in the absence of any contrary evidence is simply to impose upon the defendant a burden to go forward with or produce some evidence of all elements of self-defense or heat of passion on sudden provocation, or rely on such evidence as may be present in the State's case. The mandatory presumption is simply a way of stating our legal rule that in the absence of evidence of mitigating or justifying factors all killings accomplished through the intentional use of a deadly weapon are deemed to be malicious and unlawful."

In this case there is no evidence of a killing in self-defense. The evidence is that defendant, unprovoked, first accosted the deceased with a deadly weapon in the home of Virginia Cross. He then, while continuing to fire the weapon, chased the deceased to the home of Vandell Cross. While inside the home of Vandell Cross the weapon was heard to fire. Shortly thereafter the deceased was found dead of a bullet wound on the floor of Vandell Cross' kitchen with a butcher knife in his hand. There is no

evidence of precisely what happened in the kitchen. Defendant, however, if he desires to rely on the defense of self-defense has the burden to go forward with or produce some evidence of it in the absence of its production by the state. *State v. Hankerson, supra.* This he failed to do. There was, consequently, no burden on the state to prove the nonexistence of self-defense in this case. This assignment of error is overruled.

[5] Defendant next assigns as error the following instruction of the trial judge:

> "During the course of my instructions to you I may use the term 'involuntary manslaughter.' I instruct you now that if I use the term 'involuntary manslaughter' it has the same meaning as manslaughter, and for the purposes of this trial the two interchangeable."

Obviously by this instruction the trial court was guarding against a possible later *lapsus linguae.* The trial court never submitted involuntary manslaughter as an alternative verdict. Neither did he commit the slip of the tongue which he attempted to guard against by the introductory instruction complained of. Defendant does not argue that involuntary manslaughter should have been submitted as an alternative verdict. He argues, rather, that the instruction in question created "confusion as to the lesser degrees of homicide" and prejudiced him "by virtualy removing manslaughter from the list of understandable verdicts which the jury might return." We find no merit in this argument. The instruction is clearly precautionary and designed to prevent confusion in the jury's mind should the trial judge inadvertently use the term "involuntary manslaughter" in his further instructions. This assignment of error is overruled.

[6] Defendant assigns error to the following instruction:

> "If the State proved by the evidence beyond a reasonable doubt that the defendant, while acting in self-defense, used excessive force, or was the aggressor in bringing on the dispute with Ervin Cross, and shot Ervin Cross with a .32 caliber firearm, thereby proximately causing the death of Ervin Cross, the defendant may not avail himself of the claim of self-defense and be lawfully justified or excused of the homicide, and it would be your duty to return a verdict of guilty of manslaughter."

Defendant argues that by using the words "or was the aggressor in bringing on the dispute" the trial judge inadvertently expressed an opinion in light of the fact that there was no evidence of any "dispute" between defendant and his victim. Defendant's argument points up the real error of the instruction, but it is error in favor of the defendant. The instruction is designed to permit the jury to find defendant guilty of manslaughter on the theory that he shot the deceased in the exercise of an imperfect right of self-defense. The theory presented by this instruction is that although defendant was the aggressor in the matter, at the time he shot defendant he did so in order to save himself from death or great bodily harm. *See State v. Potter*, 295 N.C. 126, 144, 244 S.E. 2d 397, 408-409 (1978). There being, however, no evidence of a dispute which gave rise to the shooting and no evidence of self-defense, defendant was not entitled to an instruction giving him the benefit of the doctrine of self-defense, perfect or imperfect. When a defendant in a homicide case is not entitled to an instruction on the lesser offense of voluntary manslaughter because there is no evidence supporting it, any error in such an instruction is not prejudicial as a matter of law. *State v. Wetmore*, 298 N.C. 743, 259 S.E. 2d 870 (1979). This assignment is overruled.

[7]    Defendant next assigns as error the following instruction:

> "Now I will further attempt to explain those definitions to you, but before doing so I will, in the course of my instructions, refer to the term 'self-defense,' which I will define for you later.
>
> I will also be referring to the term 'without lawful justification or excuse.' When I use the phrase, 'without lawful justification or excuse,' in this trial, I am referring to the term 'self-defense.' "

Defendant argues that the charge was incorrect in that the trial judge intimated "that the right of self-defense is an act done 'without lawful justification or excuse' rather than an act done 'with lawful justification or excuse.'" Inasmuch as defendant was not entitled to an instruction on self-defense, this statement of the trial judge could not have prejudiced him. *State v. Freeman*, 275 N.C. 662, 170 S.E. 2d 461 (1969). It is, moreover, clear to us

that the trial judge intended to convey to the jury the notion that "justification or excuse" referred to the doctrine of "self-defense." He was not attempting to define at this point in his instructions the doctrine. He did correctly define it at other places in his instructions. While it would have been preferable for the judge to have told the jury that the phrase "lawful justification or excuse" referred to the doctrine of self-defense, we don't believe the jury was misled by the instruction as given. This assignment of error is overruled.

Defendant next assigns as error the failure of the trial court to set aside the verdict as being contrary to the weight of the evidence "since the State relied solely upon circumstantial evidence of a conjectural nature." Suffice it to say that we find the circumstantial evidence utilized by the state in this case rather overwhelming against defendant. There was no error in the trial judge's failure to set aside the verdict as being contrary to the weight of the evidence.

In defendant's trial we find

No error.