STATE OF NORTH CAROLINA v. CALVIN L. BREWINGTON, JR., Defendant

No. COA06-56

(Filed 17 October 2006)

**1. Accomplices and Accessories— accessory after the fact to second-degree murder—evidence sufficient**

There was sufficient evidence of accessory after the fact to second-degree murder where there was testimony of the principal's guilt, circumstantial evidence linking the principal to the

shooting, the principal's own guilty plea, a telephone call in which defendant learned that the principal had attacked the victim, and defendant's offer of two thousand dollars for the use of a car to leave town with the principal, in which they did in fact travel as far as Mississippi.

**2. Accomplices and Accessories— instruction on accessory to second-degree murder as lesser included offense—evidence supporting first or second-degree murder—no error**

The trial court did not commit plain error by instructing the jury on the lesser-included offense of accessory after the fact to second-degree murder where the evidence of the shooting could have supported either first or second-degree murder.

**3. Accomplices and Accessories— instruction on accessory to manslaughter as lesser included offense refused—evidence of manslaughter not sufficient**

The trial court did not err by refusing to instruct on the lesser included offense of accessory after the fact to voluntary manslaughter where there was no evidence that the principal acted in self-defense or that the shooting was voluntary manslaughter.

Appeal by defendant from judgment entered 22 August 2005 by Judge Ripley E. Rand in Superior Court, Cumberland County. Heard in the Court of Appeals 21 September 2006.

*Attorney General Roy Cooper, by Solicitor General Christopher G. Browning, Jr., for the State.*

*Geoffrey W. Hosford, for defendant-appellant.*

WYNN, Judge.

To convict a defendant of being an accessory after the fact, the State must prove that the defendant, with knowledge that the principal committed the felony, gave the principal personal assistance in escaping detection, arrest, or punishment.[1] Here, Defendant contends that the State failed to present substantial evidence to prove the crime of accessory after the fact to second-degree murder. Because the evidence supported a finding that Defendant personally assisted the principal in avoiding detection and arrest, we uphold Defendant's conviction.

---

1. *State v. Duvall,* 50 N.C. App. 684, 275 S.E.2d 842, *rev'd on other grounds,* 304 N.C. 557, 284 S.E.2d 495 (1981).

Defendant Calvin L. Brewington, Jr. was indicted as an accessory after the fact to the first-degree murder of Rogerick Antwon Hall by Kelly Durant Rudisill. Before Defendant's trial, Rudisill pled guilty to the second-degree murder of Hall. At Defendant's trial, the State presented evidence that Rudisill shot and killed Hall on the evening of 22 February 2004; Defendant also conceded in his brief to this Court that Rudisill killed Hall.

Marvin Sutton, a friend of Defendant, testified at trial that he was with Defendant on the evening of 22 February 2004, when the Defendant drove Sutton in his purple Nissan Altima to purchase marijuana. According to Sutton, while the two were in the car, Defendant received a call from an individual Sutton believed to be Defendant's brother, Thomas Brewington. During the call, Defendant reportedly said something along the lines of, "We got him," and that Rudisill had "gotten his stripes." Sutton testified that he believed the conversation referred to Rudisill's beating up Hall; later evidence showed that the attack was in revenge for Hall's robbery of Rudisill, Thomas Brewington, and two other friends several months earlier.

Following the phone call, Defendant and Sutton drove to a nearby neighborhood, where they saw Hall lying in the middle of the street and realized he had been shot. They left without getting out of the car, and Defendant made a phone call, upset, complaining that they had not known that Hall had been shot and that they should not have gone to the neighborhood. After leaving, Defendant, Sutton, Thomas Brewington, and Rudisill met at Defendant's apartment.

Hall died from his injuries later that night at the hospital. Following the shooting, the police started looking for a purple Nissan Altima and a black Suzuki Sidekick seen by witnesses in the neighborhood. Defendant drove a purple Nissan Altima, and his sister owned a black Suzuki Sidekick, which Thomas Brewington was seen driving on the night of the shooting. Police later found a bullet hole from the gas tank area of the Suzuki, and a projectile fragment removed from the hole was found to be consistent with a nine-millimeter bullet. The State presented further evidence that Hall was shot three times in the back and once in the leg, and that the two projectiles removed from his body were consistent with a nine-millimeter bullet. Eight spent shell casings from a nine-millimeter handgun were found at the scene, in addition to a .22 caliber handgun removed from Hall's jacket pocket.

Two days after the shooting, the police released photographs of Rudisill, Thomas Brewington, and Sutton to the local media. The

same day, Defendant approached a friend, Decarlos Wright, and offered to pay him two thousand dollars to use a car for two days in order to leave town. The two then picked up Rudisill and Thomas Brewington, who had bags packed for the trip, and headed out of town on the highway; Wright testified that he was not informed as to the ultimate destination for the trip but that Rudisill stated in the car that he "wasn't going to come back." Defendant, Rudisill, and Wright were subsequently arrested after being stopped by police in Mississippi; Thomas Brewington was later apprehended in Texas.

Defendant was charged with being an accessory after the fact to first-degree murder for the assistance he personally provided to Rudisill in escaping detection and arrest. He was then convicted of being an accessory after the fact to second-degree murder; after entering judgment, the trial court sentenced Defendant to prison for a term of 77 to 102 months. In his appeal from that judgment, Defendant contends (I) the trial court erred in denying his motion to dismiss the charge for failure to present substantial evidence; (II) the trial court committed plain error by instructing the jury as to the lesser offense of accessory after the fact to second-degree murder; and, (III) in the alternative, the trial court erred by refusing to instruct the jury as to the lesser-included offense of accessory after the fact to voluntary manslaughter.

I.

[1] "When a defendant moves to dismiss a charge against him on the ground of insufficiency of the evidence, the trial court must determine whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense." *State v. Garcia*, 358 N.C. 382, 412, 597 S.E.2d 724, 746 (2004) (citation and quotations omitted), *cert. denied*, 543 U.S. 1156, 161 L. Ed. 2d 122 (2005); *see also State v. Morgan*, 359 N.C. 131, 161, 604 S.E.2d 886, 904 (2004), *cert. denied*, 126 S. Ct. 47, 163 L. Ed. 2d 79 (2005); *State v. Butler*, 356 N.C. 141, 145, 567 S.E.2d 137, 139 (2002). Our Supreme Court has defined "substantial evidence" as "relevant evidence that a reasonable person might accept as adequate, or would consider necessary to support a particular conclusion." *Garcia*, 358 N.C. at 412, 597 S.E.2d at 746 (citations omitted).

In addition, "[i]f there is substantial evidence—whether direct, circumstantial, or both—to support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied." *Butler*, 356

N.C. at 145, 567 S.E.2d at 140 (quoting *State v. Locklear*, 322 N.C. 349, 358, 368 S.E.2d 377, 383 (1988)). In considering a motion to dismiss by the defense, such evidence "must be taken in the light most favorable to the state . . . [which is] entitled to all reasonable inferences that may be drawn from the evidence." *State v. Sumpter*, 318 N.C. 102, 107, 347 S.E.2d 396, 399 (1986).

Here, Defendant was convicted of being an accessory after the fact to second-degree murder under sections 14-7 and 14-17 of the North Carolina General Statutes. N.C. Gen. Stat. §§ 14-7, 14-17 (2005). To convict a defendant of being an accessory after the fact to second-degree murder, the State must prove the following: (1) the felony has been committed by the principal; (2) the alleged accessory gave personal assistance to that principal to aid in his escaping detection, arrest, or punishment; and (3) the alleged accessory knew the principal committed the felony. *State v. Jordan*, 162 N.C. App. 308, 312, 590 S.E.2d 424, 427 (2004). Second-degree murder is the unlawful killing of a human being with malice but without premeditation or deliberation. *State v. Flowers*, 347 N.C. 1, 29, 489 S.E.2d 391, 407 (1997), *cert. denied*, 522 U.S. 1135, 140 L. Ed. 2d 150 (1998). The intentional use of a deadly weapon which causes death gives rise to an inference that the killing was done with malice and is sufficient to establish murder in the second degree. *State v. Taylor*, 155 N.C. App. 251, 266, 574 S.E.2d 58, 68 (2002), *cert. denied*, 357 N.C. 65, 579 S.E.2d 572 (2003). Furthermore, personal assistance in *any* manner so as to aid a felon in escaping arrest or punishment is sufficient to support a conviction as an accessory. *State v. Williams*, 17 N.C. App. 39, 42, 193 S.E.2d 452, 454 (1972), *cert. denied*, 282 N.C. 675, 194 S.E.2d 155 (1973).

Defendant contends that the State failed to present substantial evidence that Rudisill committed the murder in the second degree of Hall, or that Defendant provided substantial assistance to Rudisill to avoid detection and arrest. However, a review of the record reveals that the State offered testimony from Marvin Sutton concerning Rudisill's guilt, circumstantial evidence linking Rudisill to the vehicle used in the shooting, and Rudisill's own guilty plea to the crime. Sutton further testified concerning a phone call in which Defendant learned that Rudisill had "gotten his stripes" by attacking Hall. Moreover, Decarlos Wright testified that Defendant offered two thousand dollars for the use of his car to leave town with Rudisill, and that they did, in fact, travel as far south as Mississippi.

Taken in the light most favorable to the State, it was reasonable for the jury to accept this evidence as adequate to support its con-

clusion that Rudisill committed second-degree murder, as well as that Defendant knew Rudisill had killed Hall and subsequently assisted him in escaping detection and arrest. As such, we find that the State offered substantial evidence of each element of the charge of accessory after the fact to murder in the second degree. We therefore affirm the trial court's denial of Defendant's motion to dismiss the charge.

II.

[2] Defendant next asserts that the trial court committed a plain error, which requires him to show on appeal that the asserted error: (1) is a "fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done"; (2) "amounts to a denial of a fundamental right of the accused;" (3) has "resulted in a miscarriage of justice or in the denial to appellant of a fair trial"; (4) "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings"; or, (5) was an instructional mistake that "had a probable impact on the jury's finding that the defendant was guilty." *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983).

Defendant argues the trial court committed a plain error by instructing the jury on the offense of accessory after the fact to second-degree murder. Our Supreme Court has defined the test for determining whether an instruction on second-degree murder is required as follows:

> The determinative factor is what the State's evidence tends to prove. If the evidence is sufficient to fully satisfy the State's burden of proving each and every element of the offense of murder in the first degree, including premeditation and deliberation, and there is no evidence to negate these elements . . ., the trial judge should properly exclude from jury consideration the possibility of a conviction of second degree murder.

*State v. Strickland*, 307 N.C. 274, 293, 298 S.E.2d 645, 658 (1983), *overruled in part on other grounds*, *State v. Johnson*, 317 N.C. 193, 344 S.E.2d 775 (1986). Thus, an instruction on the lesser-included offense of second-degree murder is required—and allowed—only where there is not direct, uncontradicted evidence of premeditation and deliberation, such that murder in the first degree is the sole possible verdict that could be supported. *See also Hopper v. Evans*, 456

U.S. 605, 611, 72 L. Ed. 2d 367, 373 (1982) ("[D]ue process requires that a lesser included offense instruction be given when the evidence warrants such an instruction. . . . The jury's discretion is thus channeled so that it may convict a defendant of any crime fairly supported by the evidence."); *State v. Arnold*, 329 N.C. 128, 139, 404 S.E.2d 822, 829 (1991) (finding error to have given instruction on second-degree murder because of clear and overwhelming evidence of premeditation and deliberation).

First-degree murder is the unlawful killing, with malice, premeditation, and deliberation, of another human being. *State v. Bonney*, 329 N.C. 61, 77, 405 S.E.2d 145, 154 (1991). Premeditation means that the defendant formed the specific intent to kill the victim for some length of time, however short, before the actual killing. *State v. Myers*, 299 N.C. 671, 677, 263 S.E.2d 768, 772 (1980). Deliberation means that the defendant carried out the intent to kill in a cool state of blood, "not under the influence of a violent passion, suddenly aroused by lawful or just cause or legal provocation." *State v. Hamlet*, 312 N.C. 162, 170, 321 S.E.2d 837, 842-43 (1984). Premeditation and deliberation may be proven through circumstances and actions such as want of provocation by the deceased, the conduct and statements of the defendant before and after the killing, including threats, previous ill will between the parties, or evidence that the killing was done in a brutal manner. *State v. Lane*, 328 N.C. 598, 609, 403 S.E.2d 267, 274, *cert. denied*, 502 U.S. 915, 116 L. Ed. 2d 261 (1991).

In the instant case, by Defendant's own admission, the State did not present any evidence about what may have transpired between Hall and Rudisill prior to the shooting. Although the physical evidence, such as the four gunshot wounds to Rudisill, could have supported a finding of premeditation and deliberation, Marvin Sutton also testified that he thought Hall had been "jumped," which could support a reasonable inference that the attack had been spontaneous. The State did not present overwhelming evidence of first-degree murder such as to preclude an instruction on second-degree murder; rather, both due process and the evidence warranted an instruction on both offenses given that the evidence could support either conclusion.

We therefore hold that the trial court did not commit plain error by instructing the jury on the lesser-included offense of accessory after the fact to second-degree murder.

**STATE v. BREWINGTON**

[179 N.C. App. 772 (2006)]

IV.

**[3]** In the alternative, Defendant contends that the trial court committed reversible error by refusing to instruct the jury on the lesser-included offense of accessory after the fact to voluntary manslaughter. *See State v. Lytton*, 319 N.C. 422, 426-27, 355 S.E.2d 485, 487 (1987) (if supported by the evidence, failure to instruct the jury on a lesser-included offense is reversible error). Defendant argues that if Rudisill did not act with premeditation and deliberation in killing Hall, he instead acted in imperfect self-defense such that the killing was voluntary manslaughter.

Voluntary manslaughter is the unlawful killing of a human being without malice and without premeditation or deliberation. *State v. Wilkerson*, 295 N.C. 559, 577, 247 S.E.2d 905, 915 (1978). In addition, "[I]n order for an instruction on imperfect self-defense to be required, the first two elements of perfect self-defense must be shown to exist," *State v. Wallace*, 309 N.C. 141, 149, 305 S.E.2d 548, 53 (1983), namely:

(1) it appeared to defendant and he believed it to be necessary to kill the deceased in order to save himself from death or great bodily harm; and

(2) defendant's belief was reasonable in that the circumstances as they appeared to him at the time were sufficient to create such a belief in the mind of a person of ordinary firmness.

*Id.* at 147, 305 S.E.2d at 552. When arguing self-defense, and in the absence of any evidence contrary to the claim, a defendant must either himself present evidence of self-defense or rely on such evidence as may be present in the State's case. *State v. Boone*, 299 N.C. 681, 687-88, 263 S.E.2d 758, 761 (1980).

"To determine whether . . . evidence is sufficient for submission of the lesser offense to the jury, [a court] must view the evidence in the light most favorable to defendant." *State v. Barlowe*, 337 N.C. 371, 378, 446 S.E.2d 352, 357 (1994). Nevertheless, "[w]here there is evidence only of the greater offense and no evidence which would support a verdict of the lesser offense, then the trial court is not required to instruct the jury on the lesser degrees of the crime charged." *State v. Perry*, 21 N.C. App. 528, 529, 204 S.E.2d 916, 917 (1974).

Here, as in *Perry*, Defendant argues that because a gun was found in the deceased's pocket, the individual convicted for the killing could have thought the deceased was going for the gun. However,

also as in *Perry*, there was no evidence presented at trial that the felon knew the deceased had a gun on his person or that the deceased made a move to go to his pocket. *Id.* Although evidence was presented at trial concerning Rudisill's possible motive for killing Hall, that robbery occurred several months prior to the killing and would in fact suggest premeditation rather than self-defense. Moreover, neither the State nor the defense called any eyewitnesses to describe the shooting.

We therefore find that there was no evidence that Rudisill acted in self-defense or that the shooting was voluntary manslaughter. Accordingly, we hold that the trial court did not commit error in refusing to instruct the jury on the lesser-included offense of accessory after the fact to voluntary manslaughter.

No error.

Judges McGEE and McCULLOUGH concur.