IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-186

Filed 1 October 2024

Yadkin County, Nos. 21CRS87–88, 21CRS91, 22CRS73

STATE OF NORTH CAROLINA

v.

DARRICK FOSTER VILLARREAL

Appeal by defendant from judgments entered 21 April 2022 by Judge Michael B. Duncan in Yadkin County Superior Court. Heard in the Court of Appeals 31 October 2023.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Torrey D. Dixon, for the State.*

*Law Offices of Bill Ward & Kirby Smith, P.A., by Kirby H. Smith, III, for defendant-appellant.*

STADING, Judge.

Darrick Foster Villarreal ("Defendant") appeals from judgments entered upon his convictions of accessory after the fact to robbery with a dangerous weapon, accessory after the fact to felonious breaking or entering, and felonious possession of stolen goods, and upon his plea of guilty to attaining habitual felon status. Defendant argues the trial court erred in denying his motion to dismiss the charges of accessory after the fact to robbery with a dangerous weapon and accessory after the fact to

breaking or entering. For the reasons below, we hold the trial court did not err in denying his motion to dismiss. Defendant also petitions this Court for a writ of certiorari to obtain a review of the trial court's award of restitution. We allow the petition to issue the writ of certiorari, vacate the restitution order, and remand to the trial court for a new hearing to determine the appropriate amount of restitution.

## I.    Background

On 26 April 2021, Defendant was indicted for aiding and abetting robbery with a dangerous weapon, accessory after the fact to robbery with a dangerous weapon, accessory after the fact to felony breaking or entering, accessory after the fact to felony second-degree kidnapping, and attaining habitual felon status. On 25 March 2022, Defendant was charged by information with possession of stolen goods. On 13 April 2022, the State dismissed the aiding and abetting robbery with a dangerous weapon charge.

Defendant's trial commenced on the 18 April 2022 criminal session of Wilkes County Superior Court. The State's evidence tended to show that in the afternoon of 6 July 2020, Defendant picked up Brandon Stacy ("Stacy"), Christopher Caudill ("Caudill"), and Heaven Smith ("Smith") by the side of the road in Yadkinville after the vehicle they were driving broke down. The group stopped at a convenience store and then went to Caudill and Smith's residence. Caudill and Smith lived in a small outbuilding behind Caudill's grandparents' home ("the Strickland home").

Once all four were inside the outbuilding, Stacy and Caudill discussed plans to

rob Stephen and Ashley Peachey (collectively "the Peacheys"). Either Stacy or Caudill spray painted a plastic gun black, and Stacy put on a black sweatshirt and covered his face with a blue bandana. Smith helped Stacy pull his hair back. Defendant then left the outbuilding and told the group he would see them later.

Around 5:00 or 5:30 p.m., Stacy left the outbuilding and headed towards the Peacheys' home, which was located less than 100 feet from the Peacheys' business, The Dutch Kettle. Stacy entered through the front door of the Peacheys' home, walked over to the Peacheys' eight-year-old daughter who was standing in the kitchen, and demanded that she take him to her mother, Mrs. Peachey. Mrs. Peachey was in the basement of their home with her one-year-old daughter. Unbeknownst to Stacy, Mrs. Peachey's oldest daughter, who was in an adjoining room, saw Stacy and called Mr. Peachey, who was at The Dutch Kettle, to tell him that there was an intruder in the home. Mr. Peachey ran towards his home after receiving the call.

Meanwhile, the eight-year-old led Stacy to the basement, and Stacy pointed a black gun at Mrs. Peachey. He also had a knife hanging from a sheath. He told Mrs. Peachey that if she did not give him all her money, gold, and silver, he would shoot her. Stacy demanded that Mrs. Peachey open her safe and cut the phone line to the house. Stacy then directed Mrs. Peachey to find her eight-year-old daughter and led Mrs. Peachey and her one-year-old upstairs. As Mrs. Peachey was going up the stairs, he poked his gun in her back and told her to hurry.

When they arrived upstairs, Mrs. Peachey's eight-year-old daughter and her

oldest daughter were there. Displaying his gun, Stacy told everyone to head back down to the basement. Stacy directed Mrs. Peachey and her daughters into the room where the safe was located and demanded that Mrs. Peachey open the safe. At that point, Mr. Peachey arrived at his residence and ran down to the basement. Stacy pointed his gun at Mr. Peachey and told him that he was going to "blow [his] head off" if he did not open the safe for him. Mr. Peachey opened the safe, which stored Mr. Peachey and his father's gold and silver coin collection. Stacy had brought a yellow and gray backpack, and Mr. Peachey filled the backpack up with his coins. Stacy then grabbed Mr. Peachey's camouflage backpack, hanging on a nearby hook and began filling it with more coins. Stacy took both backpacks and told Mr. Peachey to show him "the way out of here." Stacy said that if the cops were called, "[w]e're going to come back and eat you up." He then exited through the basement door. Mr. Peachey saw Stacy run through the woods towards the Strickland home. He then called the police.

After leaving the Peacheys' residence, Stacy hid both backpacks in the woods. He returned to the outbuilding and told Caudill and Smith that the police were coming and that they needed to call Defendant. Smith called Defendant, but he did not answer. Stacy left, and Caudill and Smith went into the Strickland home, where police were waiting. Police apprehended Stacy in a nearby cornfield and questioned Caudill and Smith. Later that night, around 11:00 p.m., Caudill and Smith called Defendant again. Caudill and Smith began walking up the road, away from the

Strickland home, and Defendant picked them up. The three went to Winston-Salem to buy heroin. Caudill, Smith, and Defendant returned to Defendant's home and discussed where Stacy had hidden the backpacks.

Defendant searched the woods for the backpacks but could not locate them. Julio Chavez ("Chavez"), Defendant's friend, stood as a "lookout" while Defendant entered the woods. Later that day, Defendant returned to the woods and found both backpacks. Defendant put both backpacks in his car and drove Caudill and Smith to the home he shared with his mother. The backpacks contained silver and bags of coins. Defendant took the backpacks from his car and hid them at his mother's home. The three then drove to Winston-Salem to buy more heroin. Next, they then went to Greensboro and traded a silver bar from the backpacks for heroin. Thereafter, Defendant and Caudill dropped Smith off at the outbuilding, and Defendant and Smith returned to Defendant's home to retrieve the backpacks. When Defendant and Caudill returned to the outbuilding, Defendant threw the backpacks out of the car and left. Caudill and Smith put the contents of one of the backpacks into the other, put the backpacks in a suitcase, and hid the suitcase in a carport located between the Strickland home and the outbuilding.

On 10 July 2020, police searched the carport and found a suitcase which contained one of the backpacks. The backpack had containers filled with coins. During a subsequent search of the Strickland home, police located the second backpack in the attic of the Strickland home and several coins throughout the

residence. Police also located a silver coin at Defendant's residence, consistent with the coins missing from the Peacheys' residence.

At the close of the State's evidence, Defendant moved to dismiss all the charges against him. The trial court denied this motion. Defendant testified in his own defense. Following the close of all the evidence, Defendant again moved to dismiss all the charges, which the trial court denied.

On 21 April 2022, a jury found Defendant guilty of accessory after the fact to robbery with a dangerous weapon, accessory after the fact to breaking or entering, and possession of stolen goods. Defendant pleaded guilty to attaining habitual felon status. The trial court sentenced Defendant to an active term of 84 to 113 months for accessory after the fact to robbery with a dangerous weapon and a consecutive active sentence of 72 to 99 months for possession of stolen goods. The trial court arrested judgment on the accessory after the fact to breaking or entering offense. Defendant was ordered to pay $12,264.70 in restitution. Defendant appeals.

## II. Jurisdiction

This Court has jurisdiction to consider Defendant's appeal under N.C. Gen. Stat. §§ 7A-27(b)(1) and 15A-1444(a) (2023).

## III. Analysis

Defendant presents two issues for our consideration: (1) whether the trial court erred by denying his motion to dismiss the accessory after the fact charges, and (2) whether the trial court erred by awarding restitution unsupported by competent

evidence. We consider each issue below.

## A. Motion to Dismiss

On appeal, Defendant argues that the trial court erred by denying his motion to dismiss the charges of accessory after the fact to robbery with a dangerous weapon and accessory after the fact to breaking or entering. We disagree.

"We review the trial court's denial of a motion to dismiss *de novo*." *State v. Sanders*, 208 N.C. App. 142, 144, 701 S.E.2d 380, 382 (2010).

> When reviewing a defendant's motion to dismiss a charge on the basis of insufficiency of the evidence, this Court determines whether the State presented substantial evidence in support of each element of the charged offense. Substantial evidence is relevant evidence that a reasonable person might accept as adequate, or would consider necessary to support a particular conclusion. In this determination, all evidence is considered in the light most favorable to the State, and the State receives the benefit of every reasonable inference supported by that evidence. The defendant's evidence, unless favorable to the State, is not to be taken into consideration, except when it is inconsistent with the State's evidence, the defendant's evidence may be used to explain or clarify that offered by the State. Additionally, a substantial evidence inquiry examines the sufficiency of the evidence presented but not its weight, which is a matter for the jury. Thus, if there is substantial evidence—whether direct, circumstantial, or both—to support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied.

*State v. Hunt*, 365 N.C. 432, 436, 722 S.E.2d 484, 488 (2012) (citations and emphasis omitted).

To survive a motion to dismiss a charge of accessory after the fact to robbery with a dangerous weapon and accessory after the fact to breaking and entering, the State must present sufficient evidence that "(1) the felony has been committed by the principal; (2) the alleged accessory gave personal assistance to that principal to aid in his escaping detention, arrest, or punishment; and (2) the alleged accessory knew the principal committed the felony." *State v. Brewington*, 179 N.C. App. 772, 776, 635 S.E.2d 512, 516 (2006). "The essential elements of robbery with a dangerous weapon are (1) the unlawful taking or attempted taking of personal property from a person or in his presence (2) by use or threatened use of any firearms or other dangerous weapon, implement or means (3) whereby the life of a person is endangered or threatened." *State v. James*, 321 N.C. 676, 686–87, 365 S.E.2d 579, 586 (1988). "The essential elements of felonious breaking or entering are (1) the breaking or entering (2) of any building (3) with the intent to commit a felony or larceny therein." *State v. Cox*, 375 N.C. 165, 172, 846 S.E.2d 482, 488 (2020) (citation omitted).

Defendant first argues that the State failed to present any evidence that Defendant personally assisted Stacy, the principal, in escaping or attempting to escape detection, arrest, or punishment. Defendant contends that it was impossible for him to have personally assisted Stacy because he was not present when Stacy robbed the Peacheys and he had no contact with Stacy after the crimes were committed. We are not convinced.

Smith testified that after Stacy hid the backpacks in the woods, Smith

discussed the location of those backpacks with Caudill and Defendant. Defendant then went into the woods on two occasions in search of the backpacks, once with the help of Chavez and once alone. After successfully locating them during his second search, Defendant put the backpacks in his car, drove them to the home he shared with his mother, and hid them there for some time before handing them off to Smith and Caudill. Smith and Caudill then hid both backpacks. They were later found in the attic of the Strickland home and in a carport between the Strickland home and outbuilding. Viewing this evidence in the light most favorable to the State, there was substantial evidence that after Stacy robbed the Peacheys and hid the backpacks containing coins and silver, Defendant aided Stacy by locating those backpacks, moving them, and concealing them. *See State v. Brewington*, 179 N.C. App. 772, 776, 635 S.E.2d 512, 516 (2006) (stating that "personal assistance in *any* manner so as to aid a felon in escaping arrest or punishment is sufficient to support a conviction as an accessory.").

Next, Defendant asserts that the State failed to present any evidence that he knew Stacy had committed the offenses of robbery with a dangerous weapon or breaking and entering at the time he possessed coins stolen from the Peacheys' home. He relies on his own testimony that he did not know that Stacy intended to rob the Peachey family or to enter into their home. We are not persuaded.

The State presented evidence that Defendant was present in the same small outbuilding where Stacy and Caudill discussed plans to rob the Peacheys. After Stacy

had entered the Peacheys' home and robbed them, Defendant picked up Smith and Caudill and the three discussed the bookbags Stacy had obtained and hidden. Smith testified that she told Defendant that Stacy had "went over the fence and left [the bookbags] under the brush in the woods." Smith, Caudill, and Defendant then discussed locating those bookbags. In addition, Detective Arthur C. Shores, III, who was with the Yadkin County Sheriff's Office in July 2020, testified that during an interview with Defendant on 13 July 2020, Defendant admitted "to being there[,] overhearing them talking about the robbery the day of the robbery." This evidence, viewed in the light most favorable to the State, demonstrates that Defendant knew Stacy had committed robbery and breaking or entering.

Here, the State presented sufficient evidence of the elements of accessory after the fact to robbery with a dangerous weapon and accessory after the fact to breaking or entering to withstand a motion to dismiss. Defendant's argument that the trial court erred in denying his motion to dismiss is overruled.

## B. Restitution

Defendant challenges the trial court's award of restitution, arguing that it was not supported by competent evidence. However, Defendant acknowledges that he did not file a written notice of appeal from the restitution order and petitions for a writ of certiorari so that this Court can address the merits of his argument.

Rule 21 of the North Carolina Rules of Appellate Procedure provides that this Court may grant certiorari "when the right to prosecute an appeal has been lost by

failure to take timely action[.]" N.C.R. App. P. 21(a)(1). "A petition for the writ must show merit or that error was probably committed below." *State v. Grundler*, 251 N.C. 177, 189, 111 S.E.2d 1, 9 (1959) (citations omitted). "*Certiorari* is a discretionary writ, to be issued only for good and sufficient cause shown." *State v. Gantt*, 271 N.C. App. 472, 474, 844 S.E.2d 344, 346 (2020) (citation omitted). We hereby grant Defendant's petition for a writ of certiorari to consider the merits of his challenge to the restitution order.

Under N.C. Gen. Stat. § 15A-1340.34, the trial court may order restitution "for any injuries or damages arising directly and proximately out of the offense committed by the defendant." N.C. Gen. Stat. § 15A-1340.34(c). "We review the trial court's imposition of restitution *de novo*[.]" *State v. Hussain*, 291 N.C. App. 253, 261, 895 S.E.2d 447, 453 (2023) (citation omitted). "[T]he amount of restitution recommended by the trial court must be supported by evidence adduced at trial or at sentencing." *State v. Wilson*, 340 N.C. 720, 726, 459 S.E.2d 192, 196 (1995) (citation omitted). "[T]he award does not have to be supported by specific findings of fact or conclusions of law, and the quantum of evidence needed to support the award is not high." *State v. Hillard*, 258 N.C. App. 94, 97, 811 S.E.2d 702, 704 (2018).

"Prior case law reveals two general approaches: (1) when there is *no* evidence, documentary or testimonial, to support the award, the award will be vacated, and (2) when there is specific testimony or documentation to support the award, the award will not be disturbed." *State v. Moore*, 365 N.C. 283, 285, 715 S.E.2d 847, 849 (2011).

In *Moore*, our Supreme Court identified a third approach for cases that "fall in between." *Id.* If there is "some evidence" to support an award of restitution, but "the evidence was not specific enough to support the award[,]" the "appropriate course here is to remand for the trial court to determine the amount of damage proximately caused by [the] defendant's conduct and to calculate the correct amount of restitution." *Id.* at 286, 715 S.E.2d at 849–50.

In the present case, the State's restitution worksheet shows the amount requested as $12,264.70. The worksheet is not itemized. The restitution order provides that Defendant is jointly and severally liable, with Stacy, Caudill, Smith, and "E Strickland," to the Peacheys in the amount of $12,264.70.

Mr. Peachey testified that his safe contained silver bars, as well as the following: "So most of them were Morgan dollars. There were some what they call Peace silver dollars from a wide range of years. There were some Liberty and Franklin half dollars. . . . And then there were also some American eagles." He did not testify as to the number of coins or silver bars that were taken from his home, but he testified that the value of each silver bar was about $250.00 and that the coins ranged in value from $12.00 to $50.00 each. Detective Shores testified that "based on the fluctuation of [the] price of silver and the value, ups and downs of different years and distinctness of those coins[ ] [s]ometimes they're worth more." Mr. Peachy believed the minimum value of the bars and coins taken from his house was $20,000. That said, Mr. Peachey also testified that he managed to recover $7,000 worth of coins

in a box that he found in his yard and "at least $10,000 to $12,000" worth of loose coins in the road.

As in *Moore*, there is "some evidence" in the instant case to support an award of restitution, but the evidence is not specific enough to support the amount included in the State's restitution worksheet or the trial court's award for the damage proximately caused by Defendant. Accordingly, we vacate the restitution award and remand to the trial court for a new hearing to determine the appropriate amount of restitution. *See, e.g., State v. Buchanan*, 260 N.C. App. 616, 624, 818 S.E.2d 616, 709–10 (2018).

## IV. Conclusion

Since there was substantial evidence of Defendant's accessory after the fact crimes, we hold that the trial court did not err in denying the motion to dismiss. However, because the evidence was not specific enough to support the amount of restitution awarded, we vacate the trial court's restitution order and remand solely on the issue of restitution.


NO ERROR IN PART; VACATED IN PART AND REMANDED.

Judges ZACHARY and THOMPSON concur.